.978 01/16/2009 4 17 PM

**Partner# 4**

Schedule K-1
(Form 1065)

Department of the Treasury
Internal Revenue Service

**2008**

For calendar year 2008, or tax

year beginning _____

ending _____

**Partner's Share of Income, Deductions, Credits, etc.**    ▶ See back of form and separate instructions.

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number
_____751

**B** Partnership's name, address, city, state, and ZIP code

GJTT, LLC

1405 - 117 S FEDERAL HWY
DELRAY BEACH          FL 33483-5060

**C** IRS Center where partnership filed return
Ogden, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

**E** Partner's identifying number
_____2719

**F** Partner's name, address, city, state, and ZIP code

TERRY EICHAS

6926 SKYLINE DR
DELRAY BEACH          FL 33446

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I** What type of entity is this partner?  Individual

**J** Partner's share of profit, loss, and capital (see instructions):

|  | Beginning | Ending |
|---|---|---|
| Profit | 33.333330 % | 0.000000 % |
| Loss | 33.333330 % | 0.000000 % |
| Capital | 33.333330 % | 0.000000 % |

**K** Partner's share of liabilities at year end:

| Nonrecourse | $ _____ |
| Qualified nonrecourse financing | $ _____ |
| Recourse | $ _____ |

**L** Partner's capital account analysis:

| Beginning capital account | $ | 53,098 |
| Capital contributed during the year | $ | 5,267 |
| Current year increase (decrease) | $ | -4,795 |
| Withdrawals & distributions | $ ( | ) |
| Ending capital account | $ | 53,570 |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book

☐ Other (explain)

For IRS Use Only

☒ Final K-1    ☐ Amended K-1    OMB No. 1545-0099   651108

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) -4,795 | 15 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | 19 | Distributions |
| 13 | Other deductions | | |
| | | 20 | Other information |
| 14 | Self-employment earnings (loss) | | |

*See attached statement for additional information.

**Partner's Share of Income, Deductions, Credits, etc.**

TRUSTEE EXHIBIT 3

For Paperwork Reduction Act Notice, see Instructions for Form 1065.

DAA

Schedule K-1 (Form 1065) 2008

Partner# 4

| Schedule **K-1** | **Partner's Basis Worksheet, Page 1** | **2008** |
|---|---|---|
| | For calendar year 2008, or tax year beginning                    , and ending | |

| Partnership Name | Employer Identification Number |
|---|---|
| GJTT, LLC | ●●●●●●●●0751 |

| Partner's Name | Taxpayer Identification Number |
|---|---|
| TERRY EICHAS | ●●●●●●●●2719 |

| | | | | | |
|---|---|---|---|---|---|
| **Beginning of year** | | | | | |
| **Increases:** | | | | | 151,765 |
| Capital contributions: | Cash | 5,267 | Property (adjusted basis) | | |
| Increase in share of partnership liabilities | | P/Y | | C/Y | 5,267 |
| "Excess" depletion | | | | | |
| Income items: | Ordinary income | | | | |
| | Net income from rental real estate activities | | | | |
| | Net income from other rental activities | | | | |
| | Interest | | | | |
| | Dividends | | | | |
| | Royalties | | | | |
| | Net short-term capital gain | | | | |
| | Net long-term capital gain | | | | |
| | Other portfolio income | | | | |
| | Net gain under Section 1231 | | | | |
| | Other income | | | | |
| | Tax-exempt interest and other income | | | | |
| Other increases: | Transfer of capital | | | | |
| | Gain (loss) on sale of section 179 assets | | | | |
| | Distribution in excess of partner basis | | | | |
| | | | | | |
| **Distributions:** | Cash | | Property (adjusted basis) | | |
| Decrease in share of partnership liabilities | | P/Y | 98,667 | C/Y | 98,667 |
| **Subtotal** | | | | | 58,365 |
| **Decreases:** | | | | | |
| Nondeductible noncapital expenses | | | | | |
| Deductible items: | Ordinary loss | | | 4,795 | |
| | Net loss from rental real estate activities | | | | |
| | Net loss from other rental activities | | | | |
| | Royalties | | | | |
| | Net short-term capital loss | | | | |
| | Net long-term capital loss | | | | |
| | Other portfolio loss | | | | |
| | Net loss under Section 1231 | | | | |
| | Other losses | | | | |
| | Charitable contributions | | | | |
| | Section 179 expense | | | | |
| | Deductions related to portfolio income | | | | |
| | Other deductions | | | | |
| | Interest expense on investment debts | | | | |
| | Foreign taxes | | | | |
| | Section 59(e) expenses | | | | |
| Depletion | | | | | |
| Other decreases: | | | | | 4,795 |
| | | | | | |
| **End of year** | | | | | 53,570 |

*Note to partner: This worksheet was prepared based on partnership records. Please consult with your tax advisor for adjustments.



TRUSTEE
EXHIBIT
4

# CONTRACT FOR SALE AND PURCHASE OF SHARES OF STOCK

This Contract for Sale and Purchase of Shares of Stock made this _____ day of January, 2006, by and between TERRY R. EICHAS (hereinafter referred to as the "Seller") and RICHARD MCGLOIN and DAVID GOODMANSON or their assigns (hereinafter collectively referred to as the "Purchaser") and collectively referred to as the "parties";

**WHEREAS**, DELRAY BEACH REALTY GROUP, INC. (hereinafter referred to as the "Corporation") is a corporation duly organized under the laws of the State of Florida, authorized to issue one thousand (1,000) shares of common stock;

**WHEREAS**, Seller TERRY R. EICHAS is an individual with an address of 12742 Oak Run Court, Boynton Beach, FL 33436 and is the owner of two hundred ninety-nine (299) of the issued shares of Delray Beach Realty Group, Inc.;

**WHEREAS**, Purchaser RICHARD MCGLOIN is an individual with an address of 2275 North Swinton Avenue, Delray Beach, FL 33444;

**WHEREAS**, Purchaser DAVID GOODMANSON is an individual with an address of 2501 S.W. Cranbrook Drive, Boynton Beach, FL 33436;

**WHEREAS**, Seller is the owner of twenty-nine and nine-tenths percent (29.9%) of the issued and outstanding capital stock of Delray Beach Realty Group, Inc., a corporation duly organized under the laws of the State of Florida. Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, all of Seller's issued and outstanding capital stock of the Corporation, said shares constituting one hundred percent (100%) of the Seller's interest in said Corporation, twenty-nine and nine-tenths percent (29.9%) of the authorized shares of said Corporation, and twenty-nine and nine-tenths percent (29.9%) of the issued shares of said Corporation, including all interests which accrue to such shares including, but not limited to, all of the fixed and unfixed assets of the Corporation as further set forth below;

**NOW, THEREFORE**, in consideration of the mutual representations, warranties, covenants and agreements contained herein, the parties agree as follows:

## 1.   Purchase and Sale of Shares.

Subject to the terms and conditions of this Contract, Seller agrees to sell, transfer, and assign to Purchaser, and Purchaser agrees to purchase, at the closing, as defined in this Contract, all of the Seller's issued and outstanding capital stock of the Corporation. At the closing, Seller shall deliver to Purchaser a certificate or certificates evidencing the Corporation's stock in form ready for transfer and duly endorsed to Purchaser. At the Closing, Seller shall convey, assign and transfer to the Purchaser, and Purchaser shall acquire from Seller, one hundred percent (100%) of Seller's interest in the Corporation, specifically:

Two Hundred Ninety-Nine (299) shares of Delray Beach Realty Group, Inc.

free and clear of any and all liabilities, liens, obligations, security interests, encumbrances and the like, including the corporation's interest in:

a.    all of the real, fixed and tangible personal property used in the operation of the Corporation;

b.    the goodwill and other intangible assets used in the operation of the Corporation, including, but not limited to, all trade secrets, know-how, all sales, pricing and operation plans and customer and supplier lists used in the operation of the Corporation;

c.    the Seller's right, title and interest in any licenses, permits and authorizations issued by any federal, state or local governmental or regulatory agencies which are used in the operation of the Corporation;

d.    all bank accounts of the Corporation; and

e.    all contracts to which the Corporation is a party.

At the closing, and from time to time after the closing, Seller shall execute and deliver other documents and instruments, and take other actions, as Purchaser may reasonably request, in order to more fully vest in Purchaser all right, title, and interest in and to the Corporation's stock; and any and all other right, title, interest, claim, or demand of any kind that Seller may have in, to, or on any of the properties, assets, or business of the Corporation.

2.    **Purchase Price and Method of Payment.**

In consideration of the sale, conveyance, assignment and transfer of the shares of stock by Seller to Purchaser and in reliance upon the representations and warranties made by Seller to Purchaser, the Purchaser agrees to pay Seller a total purchase price of One Million Two Hundred Thousand and 00/100 Dollars ($1,200,000.00) as follows:

a)    earnest money deposit to be paid to Seller upon the execution of this Contract in the amount of Two Hundred Thousand and 00/100 Dollars ($200,000.00);

b)    at the Closing of this transaction, Purchaser shall pay to Seller the sum of Five Hundred Thousand and 00/100 ($500,000.00); and

c)    at the Closing of this transaction, Purchaser shall execute and deliver a Promissory Note in favor of Seller described as follows:

---

(1)    Promissory Note in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) to bear interest at the rate of seven percent (7%) per annum payable, to be paid in full no later than December 31, 2006, said date which shall be known as the "maturity date". Said Promissory Note shall be secured by the shares of stock to be conveyed hereunder and by the personal guarantees of the Purchaser. Said obligation will also be guaranteed corporately by Delray Beach Realty Group, Inc. The Purchaser shall have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "pre-payment". When a pre-payment is made, the Purchaser shall inform Seller in writing that they are doing so. Said full pre-payment or partial pre-payments may be made without the payment of any pre-payment charge. If a partial pre-payment is made, there will be no changes in the due date unless the Seller agrees in writing to such change.

3.    **Closing.**

The Closing shall take place at the offices of the Corporation's attorney, James N. Reyer, P.A. at 5301 North Federal Highway, Suite 130, Boca Raton, FL 33487, on the 28th day of February, 2006, or at such location or date as may be mutually agreed upon by and between the parties.

4.    **Instruments of Conveyance and Title.**

The Seller will deliver to the Purchaser the physical stock certificate(s) evidencing the Seller's Two Hundred Ninety-Nine (299) shares of Delray Beach Realty Group, Inc. Said stock certificate(s) shall be duly executed to evidence the transfer of ownership. The Seller will deliver such other deeds, bills of sale, endorsements, consents, letters of estoppel, assignments and other good and sufficient instruments of conveyance and transfer as are necessary to vest in the Purchaser title to the Two Hundred Ninety-Nine (299) shares of Delray Beach Realty Group, Inc. as Purchaser shall deem necessary, free and clear of any and all liabilities, liens, obligations, security interests, encumbrances and the like. Such delivery shall be made to Purchaser at the Closing of this transaction.

5.    **Seller's Title to Stock.**

Seller represents and warrants that Seller has good, absolute, and marketable title to the Corporation's stock, free and clear of all liens, claims, encumbrances, and restrictions of every kind; Seller has the complete and unrestricted right, power, and authority to sell, transfer, and assign the Corporation's Stock pursuant to this Contract; and that the delivery of the Corporation's Stock to Purchaser as contemplated in this Contract will vest in Purchaser good, absolute, and marketable title to all of the Corporation's Stock, free and clear of all liens, claims, encumbrances, and restrictions of every kind.

6.    **Due Organization.**

Seller represents and warrants that the Corporation is a duly organized and validly existing

---

Florida corporation in good standing, with all requisite corporate power and authority to carry on its business as presently conducted.

7.    **Intercorporate Relations.**

Seller represents and warrants that the Corporation has no subsidiaries and has no direct or indirect equity interest in any other firm, corporation, or business enterprise.

8.    **Effective Date.**

Notwithstanding any terms and conditions contained herein to the contrary, the effective date of the transfer of the ownership of the shares of stock shall be January 1, 2006. Any tax returns prepared by the Corporation for tax year 2006 (including, but not limited to K-1 for the individual shareholders) and all subsequent years shall reflect the effective date for the transfer of the ownership interest herein as January 1, 2006.

9.    **Termination of Existing Lease Agreements.**

Seller and Purchaser acknowledge that the Corporation is the Lessor under three (3) Lease Agreements for four (4) of the suites at the real property located at 640 East Atlantic Avenue, Delray Beach, Florida owned by the Corporation, under which Seller is the principal owner of the three (3) Tenant corporations, as follows:

Suite 1: Homes of Distinction Realty, Inc.
Suite 5: Royalty Title, Inc.
Suites 6 and 7: Lulu's Place

*(handwritten: RH)*

*(handwritten: UNTIL APRIL 30, 2006)*

The parties agree that said Lease Agreements shall remain in full force and effect ~~for a period not to exceed ninety (90) days after the Closing of this transaction. The corporate tenants under said~~ Lease Agreements (and all individual guarantors thereof) shall continue to ~~make all required~~ payments and abide by all requirements under said Lease Agreements. ~~Upon the expiration of ninety (90) days after the Closing of the transaction,~~ provided that the ~~corporate~~ Tenants are still in good standing under the ~~Lease Agreements,~~ said Lease Agreements shall terminate, become null and void and the parties thereto shall have no further obligations to each other. Notwithstanding the above, if the Corporation is able ~~to procure a replacement tenant~~ or tenants for any of the above suites before the expiration of the ninety (90) day period, the Lease Agreement for that particular suite or suites shall terminate upon the commencement of any new replacement Lease Agreement or Agreements.

10.    **Indebtedness.**

Seller represents and warrants that Seller has delivered to Purchaser true copies of all instruments relating to the Corporation's long-term and short-term indebtedness, and that the

Corporation is not in any default or violation of any provision of its outstanding long-term or short-term indebtedness.

## 11.    Stock Rights.

Seller represents and warrants that there are no outstanding options, contracts, commitments, warranties, agreements, or other rights of any character affecting or relating in any manner to the issuance of the Corporation's capital stock or other securities, or entitling anyone to acquire the Corporation's capital stock or other securities.

## 12.    Financial Statements.

Purchaser has in their possession all financial statements of the Corporation as Purchaser deems necessary for their due diligence in this transaction. All financial statements have been prepared in accordance with the books and records of the Corporation, fairly present the financial condition of the Corporation and the result of its operations, were prepared in accordance with generally accepted accounting principles applied on a basis consistent with prior accounting periods, and, with respect to all contracts and commitments of the Corporation, reflect adequate reserves for all reasonably anticipated losses and costs in excess of anticipated income.

## 13.    Disclosure of Debts and Liabilities.

Seller represents and warrants that the financial statements disclose all of the debts, liabilities, and obligations of any nature (whether absolute, accrued, contingent, or otherwise and whether due or to become due) of the Corporation and include appropriate reserves for all taxes and other liabilities accrued or due at the balance sheet date but not yet payable.

## 14.    Tax Returns and Audits.

Seller represents and warrants that the Corporation has duly filed all federal, state, and local tax returns required to be filed by it and has paid all federal, state, and local taxes required to be paid with respect to the periods covered by the returns. Seller represents and warrants that the Corporation has not been delinquent in the payment of any tax, assessment, or governmental charge; the Corporation has not had any tax deficiencies proposed or assessed against it and has not executed any waiver of the statute of limitations on the assessment or collection of any tax; the Corporation's federal tax returns have never been audited by the Internal Revenue Service; and the Corporation's state tax returns have never been audited by the Florida Department of Revenue.

## 15.    Litigation.

Seller represents and warrants that there are no legal actions, suits, arbitrations, or other legal administrative or other governmental proceedings pending or threatened against the Corporation, its properties, assets, or business; and that neither Seller nor the Corporation is aware of any facts that, to the knowledge of either, might result in any action, suit, arbitration, or other proceeding.

16.  **Compliance With Law and Instruments.**

Seller represents and warrants that the business and operation of the Corporation have been and are being conducted in accordance with all applicable laws, rules, and regulations of all authorities, except those that do not (either individually or in the aggregate) materially and adversely affect the Corporation or its properties, assets, businesses, or prospects; performance of this Contract will not result in any breach of, constitute a default under, or result in the imposition of any lien or encumbrance on any property of the Corporation under any arrangement, agreement, or other instrument to which the Corporation or Seller is a party or by which either is bound or affected, and will not violate the Articles of Incorporation, as amended, or the bylaws of the Corporation; and that the Corporation is not in violation of its Articles of Incorporation, as amended, its bylaws, or of any indebtedness, mortgage, contract, lease, or other agreement or commitment.

17.  **Additional Representations.**

Seller makes the following representations to the Purchaser:

a.  Seller has provided to Purchaser all of its books and records that it has in its possession pertaining to the Corporation.

b.  The Corporation is a duly organized Florida corporation validly existing and in good standing. The execution and delivery of this Contract to Purchaser and the carrying out of the provisions hereof have been duly authorized by the Board of Directors and Shareholders of the Corporation. A corporate resolution duly signed by all Shareholders and Directors shall be delivered at or before Closing and attached hereto and made a part hereof.

c.  There are no claims, actions, suits, or legal, administrative or other proceedings, or governmental investigation, pending, or, to the best of Seller's knowledge, threatened or anticipated before any court or governmental or administrative body affecting Seller, the Corporation, the real property and assets as it relates to this Contract, nor is Seller aware of any facts which may result in any action, suit or proceeding. Seller and the Corporation are not in default with respect to any order or decree of any court or of any governmental instrumentality. Seller and the Corporation are not presently engaged in any legal action to recover monies due to it or for damages sustained by it. Seller and the Corporation have complied with all applicable laws (including rules, regulations, codes, plans, injunctions, judgments, orders, decrees, rulings and charges thereunder) of Federal, State and Local governments (and all agencies thereof), and no action, suit, proceeding, hearing, investigation, charge, complaint, claim, demand or notice has been filed or commenced against Seller or the Corporation alleging any failure so to comply.

d.  Seller represents that there are no tax liens upon the Seller or the Corporation, the real property or assets to be conveyed hereunder or obligations or claims resulting

---

Contract for the Sale and Purchase of Shares of Stock

from taxes or assessments. The Seller, the Corporation and the real property are not subject to any obligation or liability for any taxes whatsoever that may be payable by Seller or the Corporation. All Federal, State, County and City taxes which are due and payable, and prior years, have been paid.

e.      There are no judgments, liens, actions or proceedings pending against the Seller or the Corporation affecting the shares of stock being sold hereunder.

f.      Seller has received no notices from the Internal Revenue Service or Florida Department of Revenue for any Federal, State, County and City taxes which may be due or be assessed against the Corporation or against the Seller for any other reason or purpose.

g.      Seller and/or the Corporation: (1) is not in the hands of a receiver nor is any application for a receiver pending; (2) is now operating as an ongoing business (3) does not contemplate insolvency; (4) no proceedings are pending by or against in bankruptcy or reorganization in any State or Federal court; (5) nor has it committed any act of bankruptcy.

h.      There are no contracts, licenses, agreements or commitments which are material to the Corporation, including, but not limited to, contracts of employment or contracts for the purchase of supplies or equipment, or the provision of services which Purchaser has not been made aware of and shown written documentation thereof.

i.      Seller is not in default under any contracts made or obligations owed by Seller.

j.      At the Closing of this transaction, Seller shall provide Purchaser with an Affidavit stating that there are no creditors and other entities known to Seller to have asserted claims against the Seller or the Corporation, based on goods or services provided to the Seller or Corporation, there are no judgments, liens, actions, suits, or proceedings, pending against Seller or the Corporation and there are no taxes, including, but not limited to, sales taxes, payroll taxes and personal property taxes owed to any governmental entity or other taxing authority known to Seller.

k.      The representations and warranties contained herein do not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements and information contained misleading.

## 18.    **Operations.**

Unless Purchaser consents in writing to the contrary, Seller will cause the Corporation to operate only in the ordinary course of business after the execution of this Contract. Seller shall not cause the corporation to enter into any transaction or perform any act that would constitute a breach of the representations, warranties, or agreements contained in this Contract.

---

19.    **Compliance**.

Seller will cause the Corporation and its officers and employees to comply with all applicable provisions of this Contract.

20.    **Resignation of Directors and Officers**.

Seller shall deliver to Purchaser at the closing his written resignation as a directors and officer of the Corporation.

21.    **Representations and Warranties**.

All statements of fact contained in any memorandum, certificate, instrument, or other document delivered by or on behalf of Seller for information or reliance pursuant to this Contract shall be deemed representations and warranties by Seller under this Contract. All representations and warranties of the parties shall survive the closing and all inspections, examinations, or audits on behalf of the parties.

22.    **Indemnification**.

Seller agrees to indemnify and hold harmless Purchaser on and after the Closing with respect to any claim, action, demand, loss, cost, expense, liability (joint or several), penalty, and other damage, including without limitation counsel fees and other costs and expenses reasonably incurred in investigating or in attempting to avoid or oppose the imposition of damages or in enforcing this indemnity, resulting to Purchaser from any of the following:

a.    any inaccurate representation made by or on behalf of Seller in or pursuant to this Contract;

b.    breach of any of the warranties made by or on behalf of Seller in or pursuant to this Contract; and

c.    breach or default in the performance by Seller of any of the obligations to be performed by it under this Contract;

23.    **Expenses**.

Each of the parties shall bear all expenses incurred by it in connection with this Contract and in the consummation of, and preparation for, the transactions contemplated by this Contract.

24.    **Amendment and Waiver**.

This Contract may be amended or modified at any time and in all respects, and any provision may be waived, by an instrument in writing executed by Purchaser and Seller, or by either of them

---

in case of a waiver.

25. **Assignment.**

This Contract or any right created by this Contract shall be assignable by either Seller (or their successors in interest) or Purchaser without the prior written consent of the other. Nothing in this Contract, expressed or implied, is intended to confer on any person, other than the parties and their successors, any rights or remedies under or by reason of this Contract.

26. **Headings.**

Headings contained in this Contract are for reference purposes only and shall not affect in any way the meaning or interpretation of this Contract.

27. **Parties in Interest.**

All the terms and provisions of this Contract shall be binding on and inure to the benefit of and be enforceable by Seller and Purchaser, their heirs, executors, administrators, successors, and assigns.

28. **Notices.**

All notices or other communications provided for by this Contract shall be made in writing and shall be deemed properly delivered when (i) delivered personally, or (ii) by the mailing of such notice to the parties entitled thereto, registered or certified mail, postage prepaid to the parties at the following addresses (or to such address designated in writing by one party to the other):

| | |
|---|---|
| Seller: | Terry R. Eichas<br>12742 Oak Run Court<br>Boynton Beach, FL 33436 |
| Purchaser: | Richard McGloin<br>2275 North Swinton Avenue<br>Delray Beach, FL 33444 |
| Purchaser: | David Goodmanson<br>2501 S.W. Cranbrook Drive<br>Boynton Beach, FL 33436 |
| With a copy to: | James N. Reyer, P.A.<br>5301 North Federal Highway, Suite 130<br>Boca Raton, FL 33487 |

29.    **Broker**.

The parties warrant that no broker participated in this transaction.

30.    **Attorney's Fees and Costs**.

In connection with any litigation arising out of this Contract, the prevailing party, whether Seller or Purchaser, shall be entitled to recover all costs incurred including reasonable attorney's fees for services rendered in connection with any enforcement of breach of contract, including appellate proceedings and post-judgment proceedings.

31.    **Situs**.

This Contract shall be governed by the laws of the State of Florida.

32.    **Construction**.

Each party hereto, hereby acknowledges that all parties hereto participated equally in the drafting of this Contract, and that, accordingly, no court construing this Contract shall construe it more stringently against one party than the other.

33.    **Entire Agreement**.

This Contract represents the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations (if any) made by and between the parties; all of said prior and contemporaneous negotiations, understandings and agreements are merged herein and superseded hereby; any amendment or modification of any of the terms or provisions hereof shall be ineffective unless in writing signed by the parties hereto.


**IN WITNESS WHEREOF**, the parties have signed this Agreement the day and year first above written.


WITNESS:                                        SELLER:

_____

_____                       _____
                                                TERRY R. EICHAS

_____

Contract for the Sale and Purchase of Shares of Stock                    Page 10

WITNESS:

PURCHASER:

_____

_____
RICHARD MCGLOIN

_____
DAVID GOODMANSON

# NOTE

Date:        March 9, 2006
City:        Delray Beach
State:       Florida
Address:     640 East Atlantic Avenue
             Delray Beach, Florida  33483

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that we have received, we promise to pay U.S. $500,000.00 (Five Hundred Thousand and 00/100 Dollars), said amount hereinafter called "principal", to the order of the Lender. The Lender is Terry R. Eichas residing at 12742 Oak Run Court, Boynton Beach, FL 33436. We understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on the unpaid principal at the annual rate of seven percent (7%) until the full amount of principal has been paid. If we are in default hereunder, we will pay interest at the maximum rate permissible under Florida state law at the time of our default on the unpaid principal balance.

## 3. PAYMENTS

(A) Time, Amount and Place of Payment

We shall make a lump sum payment in the amount of U.S. $500,000.00 (Five Hundred Thousand and 00/100 Dollars) plus accrued interest to the Lender on December 31, 2006, which date shall be known as the "maturity date".

We shall make our payment to Terry R. Eichas at 12742 Oak Run Court, Boynton Beach, FL 33436, or at a different place if required by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY

We have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "pre-payment". When we make a pre-payment, we shall tell the Note Holder in writing that we are doing so.

We may make a full pre-payment or partial pre-payments without paying any pre-payment charge. If we make a partial pre-payment, there will be no changes in the due date unless the Note Holder agrees in writing to those changes. Any pre-payment shall result in an appropriate reduction in the interest due on the maturity date.

## 5.  LOAN CHARGES

If a law, which applies to this Loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from us which exceeded permitted limits shall be refunded to us. The Note Holder may choose to make this refund by reducing the principal we owe under this Note or by making a direct payment to us. If a refund reduces principal, the reduction will be treated as a partial pre-payment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of the lump sum payment (inclusive of accrued interest) within ten (10) days of the day it is due, we will pay a late charge to the Note Holder. The amount of the charge shall be five percent (5%) of our overdue payment.

(B) Default

If we do not pay the full amount of the lump sum payment (inclusive of accrued interest) as per the terms of this Promissory Note, we will be in default. If the lump sum payment (inclusive of accrued interest) due under this Note is not paid when due and remains unpaid for a period of fifteen (15) days, or, should we breach or fail to comply with any other covenant or agreement under the terms of this Note, then the entire principal amount outstanding and interest at the maximum rate permissible under Florida state law at the time of default thereon, shall at once become due and payable at the option of the Note Holder.

(C) Notice of Default

If we are in default, the Note Holder may send us a written notice telling us that if we do not pay the overdue amount by a certain date, the Note Holder may require us to pay immediately the full amount of principal which has not been paid and all the interest that we owe on that amount. That date must be at least thirty (30) days after the date on which the notice is delivered or mailed to us.

(D) No Waiver by Note Holder

Even if, at a time when we are in default, the Note Holder does not require us to pay immediately in full as described above, the Note Holder will still have the right to do so if we are in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required us to pay immediately in full as described above, the Note Holder shall have the right to be paid back by us for all of its costs and expenses in enforcing this note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to us under this Note shall be given by delivering it or by mailing it by first class mail to us at the address of 640 East Atlantic Avenue, Delray Beach, FL 33483 or at a different address if we give the Note Holder a notice of our different address.

Any notice that must be given to the Note Holder under this Note shall be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if we are given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

We and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a Uniform Instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Security Instrument dated the same date as this Note, protects the Note Holder from possible losses which might result if we do not keep the promises which we make in this Note. That Security Instrument describes how and under what conditions We may be required to make immediate payment in full of all amounts we owe under this Note. Some of those conditions are described as follows:

<u>Transfer of the Property or a Beneficial Interest in Borrower.</u>
If any of the shares of stock owned by the Borrower in Delray Beach Realty Group, Inc. or all or any part of the furnishings, fixtures, equipment, real property, leasehold improvements and inventory used by the business known as Delray Beach Realty Group, or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may at its option require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Federal

Law as of the  date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**BORROWER:**
**Delray Beach Realty Group, Inc.**

By: Richard McGloin, President

---

Promissory Note

Page 4

## PERSONAL GUARANTY

**WHEREAS**, DELRAY BEACH REALTY GROUP, INC., a corporation organized under the laws of the State of Florida (hereinafter the "Purchaser"), desires to transact business with and to obtain credit from TERRY R. EICHAS (hereinafter the "Seller"), with an address of 12742 Oak Run Court, Boynton Beach, FL  33436;

**WHEREAS**, the Purchaser has executed a Promissory Note as per the Contract for the Sale and Purchase of Shares of Stock in favor of the Seller in the principal amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) plus accrued interest contemporaneously with the execution of this Personal Guaranty in favor of the Seller; and

**WHEREAS**, the Seller is unwilling to extend credit to the Purchaser unless it receives a personal guaranty of the undersigned covering the liabilities of the Purchaser to the Seller, as hereinafter defined;

**NOW THEREFORE**, in consideration of the premises and of other good and valuable consideration and in order to induce the Seller to extend credit to the Purchaser, the undersigned hereby guarantees, absolutely and unconditionally, to the Seller the payment of all liabilities of the Purchaser to the Seller of whatever nature, whether now existing or hereinafter incurred, whether created directly or acquired by the Seller by assignment or otherwise, whether matured or unmatured and whether absolute or contingent (all of which are hereinafter collectively referred to as the "Liabilities of the Purchaser").

The undersigned agree that, with or without notice or demand, that the undersigned will reimburse the Seller, to the extent that reimbursement is not made by the Purchaser, for all expenses (including reasonable attorney's fees) incurred by the Seller in connection with any Liabilities of the Purchaser or the collection thereof.

This Personal Guaranty is a continuing guarantee and shall remain in full force and effect irrespective of any interruptions in the business relations of the Purchaser with the Seller.  All moneys available to the Seller for application in payment or reduction of the Liabilities of the Purchaser may be applied by the Seller in such manner and in such amounts and at such time or times as it may see fit to the payment or reduction of such of the Liabilities of the Purchaser as the Seller may elect.

The undersigned hereby consents that from time to time, before or after any default by the Purchaser or any notice of termination hereof, with or without further notice to or assent from the undersigned, any security at any time held by or available to the Seller for any obligation of the Purchaser, or any security at any time held by or available to the Seller for any obligation of any other person secondarily or otherwise liable for any of the Liabilities of the Purchaser, may be exchanged, surrendered or released and any obligation of the Purchaser, or of any other such person, may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived and the Seller may fail to set off and release in whole or in part, any balance of any deposit account or credit on

Personal Guaranty

its book in favor of the Purchaser, or any such other person, and may extend further credit in any matter whatsoever to the Purchaser, and generally deal with the Purchaser or any such security or other person as the Seller may see fit; and the undersigned shall remain bound under this Personal Guaranty notwithstanding any such exchange, surrender, release, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing.

The undersigned hereby waives (a) notice of acceptance of this Personal Guaranty and of extensions of credit by the Seller to the Purchaser; (b) presentment and demand for payment of any of the Liabilities of the Purchaser; (c) protest and notice of dishonor or default to the undersigned or to any other party with respect to any of the Liabilities of the Purchaser; (d) all other notices to which the undersigned might otherwise be entitled; and (e) any demand for payment under this Personal Guaranty.

This is a guaranty of payment and not of collection and the undersigned further waives any right to require that any action be brought against the Purchaser or any other person or to require that resort be had to any security or to the balance of any deposit account or credit on the books of the Seller in favor of the Purchaser or any other person.

Each reference herein to the Seller shall be deemed to include his successors, heirs and assigns, in whose favor the provisions of this Personal Guaranty shall also inure. Each reference herein to the undersigned shall be deemed to include the heirs, executors, personal representatives, administrators, legal representatives, successors and assigns of the undersigned, all of whom shall be bound by the provisions of this Personal Guaranty.

The term "undersigned" as used herein shall, if this instrument is signed by more than one party, shall mean the "undersigned and each of them" and each undertaking herein contained shall be their joint and several undertaking.

No delay on the part of the Seller in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on the undersigned shall be deemed to be a waiver of the obligation of the undersigned or of the right of the Seller to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this Personal Guaranty be effective unless in writing nor shall any waiver be applicable except in the specific instance for which given.

This Personal Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Florida, and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said State; and no defense given or allowed by the laws of any other State or country shall be interposed in any action herein unless such defense is also given or allowed by the laws of the State of Florida.

**IN WITNESS WHEREOF**, this instrument has been executed on the _____ day of March, 2006.

Signed, sealed and delivered
in the presence of:

_____

_____                    _____
                                                    David Goodmanson


STATE OF _Florida_
COUNTY OF _Palm Beach_

The foregoing instrument was acknowledged before me this _____ day of March, 2006 by David Goodmanson and the above witnesses, who are:

[ X ]    personally known to me; or

[  ]    produced identification in the form of Florida Drivers Licenses which were examined by me

and who did take an oath and acknowledged that they were the individuals who executed the foregoing instrument.

PRISCILLA HARRIS
MY COMMISSION # DD 348517
EXPIRES: November 8, 2008
Bonded Thru Notary Public Underwriters

_____
NOTARY PUBLIC

PRISCILLA HARRIS

# PERSONAL GUARANTY

**WHEREAS,** DELRAY BEACH REALTY GROUP, INC., a corporation organized under the laws of the State of Florida (hereinafter the "Purchaser"), desires to transact business with and to obtain credit from TERRY R. EICHAS (hereinafter the "Seller"), with an address of 12742 Oak Run Court, Boynton Beach, FL 33436;

**WHEREAS,** the Purchaser has executed a Promissory Note as per the Contract for the Sale and Purchase of Shares of Stock in favor of the Seller in the principal amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) plus accrued interest contemporaneously with the execution of this Personal Guaranty in favor of the Seller; and

**WHEREAS,** the Seller is unwilling to extend credit to the Purchaser unless it receives a personal guaranty of the undersigned covering the liabilities of the Purchaser to the Seller, as hereinafter defined;

**NOW THEREFORE,** in consideration of the premises and of other good and valuable consideration and in order to induce the Seller to extend credit to the Purchaser, the undersigned hereby guarantees, absolutely and unconditionally, to the Seller the payment of all liabilities of the Purchaser to the Seller of whatever nature, whether now existing or hereinafter incurred, whether created directly or acquired by the Seller by assignment or otherwise, whether matured or unmatured and whether absolute or contingent (all of which are hereinafter collectively referred to as the "Liabilities of the Purchaser").

The undersigned agree that, with or without notice or demand, that the undersigned will reimburse the Seller, to the extent that reimbursement is not made by the Purchaser, for all expenses (including reasonable attorney's fees) incurred by the Seller in connection with any Liabilities of the Purchaser or the collection thereof.

This Personal Guaranty is a continuing guarantee and shall remain in full force and effect irrespective of any interruptions in the business relations of the Purchaser with the Seller. All moneys available to the Seller for application in payment or reduction of the Liabilities of the Purchaser may be applied by the Seller in such manner and in such amounts and at such time or times as it may see fit to the payment or reduction of such of the Liabilities of the Purchaser as the Seller may elect.

The undersigned hereby consents that from time to time, before or after any default by the Purchaser or any notice of termination hereof, with or without further notice to or assent from the undersigned, any security at any time held by or available to the Seller for any obligation of the Purchaser, or any security at any time held by or available to the Seller for any obligation of any other person secondarily or otherwise liable for any of the Liabilities of the Purchaser, may be exchanged, surrendered or released and any obligation of the Purchaser, or of any other such person, may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived and the Seller may fail to set off and release in whole or in part, any balance of any deposit account or credit on

---

Personal Guaranty

its book in favor of the Purchaser, or any such other person, and may extend further credit in any matter whatsoever to the Purchaser, and generally deal with the Purchaser or any such security or other person as the Seller may see fit; and the undersigned shall remain bound under this Personal Guaranty notwithstanding any such exchange, surrender, release, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing.

The undersigned hereby waives (a) notice of acceptance of this Personal Guaranty and of extensions of credit by the Seller to the Purchaser; (b) presentment and demand for payment of any of the Liabilities of the Purchaser; (c) protest and notice of dishonor or default to the undersigned or to any other party with respect to any of the Liabilities of the Purchaser; (d) all other notices to which the undersigned might otherwise be entitled; and (e) any demand for payment under this Personal Guaranty.

This is a guaranty of payment and not of collection and the undersigned further waives any right to require that any action be brought against the Purchaser or any other person or to require that resort be had to any security or to the balance of any deposit account or credit on the books of the Seller in favor of the Purchaser or any other person.

Each reference herein to the Seller shall be deemed to include his successors, heirs and assigns, in whose favor the provisions of this Personal Guaranty shall also inure. Each reference herein to the undersigned shall be deemed to include the heirs, executors, personal representatives, administrators, legal representatives, successors and assigns of the undersigned, all of whom shall be bound by the provisions of this Personal Guaranty.

The term "undersigned" as used herein shall, if this instrument is signed by more than one party, shall mean the "undersigned and each of them" and each undertaking herein contained shall be their joint and several undertaking.

No delay on the part of the Seller in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on the undersigned shall be deemed to be a waiver of the obligation of the undersigned or of the right of the Seller to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this Personal Guaranty be effective unless in writing nor shall any waiver be applicable except in the specific instance for which given.

This Personal Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Florida, and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said State; and no defense given or allowed by the laws of any other State or country shall be interposed in any action herein unless such defense is also given or allowed by the laws of the State of Florida.

**IN WITNESS WHEREOF**, this instrument has been executed on the 9th day of March, 2006.

Signed, sealed and delivered
in the presence of:

_____                    _____
                                                    Richard McGloin

_____


STATE OF FLORIDA
COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this 9th day of March, 2006 by Richard McGloin and the above witnesses, who are:

[✗]    personally known to me; or

[  ]    produced identification in the form of Florida Drivers Licenses which were examined by me

and who did take an oath and acknowledged that they were the individuals who executed the foregoing instrument.

> JAMES REYER
> MY COMMISSION # DD 315263
> EXPIRES: June 16, 2008
> Bonded Thru Notary Public Underwriters

_____
NOTARY PUBLIC

This instrument prepared by:
James N. Reyer, P.A.
5301 North Federal Highway, Suite 130
Boca Raton, FL 33487

## SECURITY INSTRUMENT

THIS SECURITY INSTRUMENT, between DELRAY BEACH REALTY GROUP, INC., herein called the Borrower, and TERRY R. EICHAS, herein called the Lender, represents the full and complete agreement between the parties hereto.

[The word the Borrower and the word Lender includes the heirs, executors, administrators, legal representatives, and assigns of individuals, and the successors and assigns of corporations, and shall denote the singular and/or plural, the masculine and/or feminine, and natural and/or artificial persons, whenever and wherever the context so requires.]

## WITNESSETH:

**WHEREAS,** the Borrower is indebted to the Lender in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00), which indebtedness is evidenced by a certain Promissory Note (hereinafter called the note), given by the Borrower to the Lender on the same date as this security agreement, payable in lawful money of the United States;

Now, therefore, in consideration of the sum hereinabove set forth, the Borrower has pledged, granted, bargained, sold, and conveyed, and by these presents does pledge, grant, bargain, sell, and convey unto the Lender, the following property:

Two Hundred Ninety-Eight (298) shares of stock in the Florida corporation known as Delray Beach Realty Group, Inc. (as represented by the Stock Certificates #9, #12 and #15, including, but not limited to, all furnishings, fixtures, equipment, real property, leasehold improvements and inventory used by the business known as Delray Beach Realty Group.

To have and to hold these shares of stock and assets hereby granted to the use, benefit and behalf of the Lender, forever, according to the following duties and obligations, covenants and terms:

Conditioned, however, that if the Borrower shall pay or cause to be paid to the Lender at the Lender's home or office address, or at such other place which may hereafter be designated by the Lender, all amounts of principal, interest, or any other amounts due, as stated in the note, unless amended or extended according to the terms of the promissory note executed by the Borrower and payable to the order of the Lender, as well as all future advances and all other sums, indebtedness, obligations, and liabilities for which this instrument is security, and shall also fully perform all the

---

Security Instrument

Page 1

covenants, conditions, and terms of this security agreement, then these presents shall be void, otherwise to remain in full force and effect.

The Borrower warrants that the Borrower has good, absolute, and marketable title to the shares of stock and assets, and has the right and authority to give security upon all of the shares of stock and assets. The Borrower acknowledges that the shares of stock and assets are free and clear of all encumbrances whatsoever, except those noted below and will forever warrant and defend the title to the shares of stock and assets unto the Lender against the claims of all persons whomsoever.

It is the intent hereof to secure payment of the aforesaid promissory note and obligation whether the entire amount shall have been advanced to the Borrower at the date hereof, or at a later date, and to secure any other amount or amounts that may be added to the indebtedness under the terms of this instrument (all of which are collectively referred to herein as the secured indebtedness), the entire secured indebtedness being equally secured with and having the same priority as any amounts advanced at the date hereof.

## THE BORROWER FURTHER COVENANTS AND AGREES AS FOLLOWS:

### A. PAYMENT

The Borrower shall pay to the Lender the secured indebtedness with interest thereon as provided in the promissory note and this security instrument.

### B. DEFAULT

The Borrower hereby promises, covenants and agrees to pay the sum of money and interest as mentioned in said promissory note, together with any and all other sums justly due and owing the Lender, in accordance with any documents associated with the within loan, or any other loan with the Lender, and secured to be paid as stated in any such documents, promptly when due. The Borrower further promises, covenants and agrees to perform all of the other terms and conditions as stated in the promissory note, this security instrument and all other loan documents. If default shall be made in the payment of said sums of money or any part thereof as provided in said promissory note, this security agreement or any other loan document with this loan, then the same shall be subject to, and it is agreed that the Lender shall collect, a "late charge" in the amount of five (5%) percent of the payment called due.

### C. SECURED INDEBTEDNESS

This security instrument shall secure all of the following: (a) the original above-stated indebtedness of the Borrower; (b) any future advances made under the provisions of the preceding paragraph; and (c) all other indebtedness of the Borrower to the Lender, or holder, including, but not limited to any other promissory note with the Lender, guaranty agreement, pledge agreement or any other liability, whether the same shall be absolute or contingent, direct or indirect, primary or

address of 640 East Atlantic Avenue, Delray Beach, FL 33483, or at such other address as may be designated, in writing, to the Lender, or to such other address as may be designated by the Borrower. Any notice provided for in this security instrument shall be deemed to have been given to either party when given in the manner designated herein.

## I. SUCCESSORS & ASSIGNS

The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of the parties, subject to the provisions of this security agreement.

**IN WITNESS WHEREOF,** the Borrower signed this Security Instrument on this 9th day of March, 2006.

**BORROWER:**
**Delray Beach Realty Group, Inc.**

By: **Richard McGloin, President**

Borrower's Post Office Address:
640 East Atlantic Avenue
Delray Beach, FL 33483

Witness (Signature)

James Keyer
Witness (Printed Name)

Witness (Signature)

JUDY RICLS
Witness (Printed Name)

State of Florida
County of Palm Beach

Affirmed before me, on March 9, 2006 by Delray Beach Realty Group, Inc., a Florida corporation, by and through Richard McGloin, its president, and the above witnesses:

[X]    who are personally known to me, or

[  ]    who have produced identification in the form of a Florida Driver's Licenses which were examined by me,

and who did take an oath, and acknowledged that they are the persons who executed the

foregoing instrument.

_____
Notary Public



_____
(Printed or Typed Name)

Commission Expiration Date & Commission Number:

JAMES REYER
MY COMMISSION # DD 315263
EXPIRES: June 16, 2008
Bonded Thru Notary Public Underwriters

---

Security Instrument                                    Page 5

**LARRY E. SCHNER, P.A.**
ATTORNEY AT LAW

Telephone: (561) 368-6266
Telefax: (561) 368-0211

750 South Dixie Highway
Boca Raton, FL 33432

of Counsel to
Lavalle, Brown, Ronan
& Mullins, P.A.

December 5, 2006


Richard McGloin
2275 N. Swinton Avenue
Delray Beach, FL 33444

David Goodsmanson
2501 SW 23rd Cranbrook Dr.
Boynton Beach FL 33436

　　　　　Re:　Terry R. Eichas

Dear Mr. McGloin and Mr. Goodsmanson:

　　　　Please be advised the undersigned law firm has been retained by Terry Eichas in regard to a Promissory Note and Personal Guarantees executed by you. The Promissory Note and Guarantees evidence a promise to pay our client $500,000 on or before December 31, 2006. My client expects full payment on or before that date as directed by the written documentation.

　　　　Please ensure that all future conversations and/or payments be made or sent through our firm as we will be handling this matter on behalf of our client, Terry Eichas. Please also note that our firm has been instructed, if payment isn't made by or before December 31, 2006, to enforce all legal rights as provided in the documents in order to ensure repayment.

　　　　Your immediate attention to this letter is requested. I look forward to hearing from you.

Very truly yours,

Larry E. Schner, Esq.

LES/es
cc:　Terry R. Eichas

## ACKNOWLEDGEMENT AND REAFFIRMATION OF GUARANTY

THIS Acknowledgment and Reaffirmation of Guaranty is made this 18th day of January, 2007, by and among the Borrower, Guarantors and Lenders as defined herein.

### WITNESSETH:

WHEREAS, DELRAY BEACH REALTY GROUP, INC., a Florida corporation (the "Borrower") and RICHARD McGLOIN, DAVID GOODMANSON and TERRY EICHAS (the "Guarantors"), executed that certain Promissory Notes and Guaranties bearing the dates 15th day of May, 2003, the 28th day of May, 2003, the 8th day of February, 2005, and the 7th day of March, 2006, to GULFSTREAM BUSINESS BANK (the "Lender"). Said Promissory Notes are secured by various Mortgages, most recently modified on March 7, 2006, and recorded in Official Records Book 20042, Page 424, of the Public Records of Palm Beah County, Florida; and

WHEREAS, Borrower and Guarantor(s) have requested that Lender release the Guaranty of TERRY EICHAS (the "Release"); and

WHEREAS, Lender is willing to grant the Release provided that among other things Borrower and the remaining Guarantors acknowledge the Release and confirm that the Borrower and remaining Guarantors will remain liable under said Note and Mortgage.

NOW THEREFORE, in consideration of ten dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     The recitals set forth above are reiterated as if fully set forth herein.

2.     Borrower and the remaining Guarantors acknowledge and consent to the granting of the aforementioned Release.

3.     Borrower and Guarantors acknowledge and confirm that the Notes, as consolidated and renewed, remains in full force and effect and shall be unaffected by the Release, except as stated therein and hereinabove.

4.     All of the obligations arising under the Note and Mortgage and the rights and remedies of Lender thereunder shall not be reduced or impaired by virtue of the Release, except as stated therein and hereinabove.

5.     Borrower acknowledges that Lender would not give its consent to the Release but for its receipt of the Acknowledgement and Reaffirmation of the Note and Mortgage.

1

6. Lender's countersignature herein shall release TERRY EICHAS from his obligation under the Guaranties.

IN WITNESS WHEREOF, the undersigned have caused this GUARANTY RELEASE AND REAFFIRMATION to be executed this _16th_ day of January, 2007.

Borrower

DELRAY BEACH REALTY GROUP, INC.

By: _____
Its: President

Remaining Guarantors

_____
RICHARD McGLOIN

_____
DAVID GOODMANSON

Agreed to and Accepted:

GULFSTREAM BUSINESS BANK

By: _____
Its: Vice President

STATE OF FLORIDA
COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this _18_ day of January, 2007 by RICHARD McGLOIN, individually and as President of DELRAY BEACH REALTY GROUP, INC., a Florida corporation, on behalf of the corporation.

_____
Signature of Notary Public-State of Florida

My Commission Expires:                     _____
Personally Known __X__ OR Produced Identification     Print, Type, or Stamp Commissioned Name of Notary Public
Type of Identification Produced

2

STATE OF FLORIDA
COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this 18th day of January, 2007 by DAVID GOODMANSON.

_____
Signature of Notary Public-State of Florida

My Commission Expires:
Personally Known _____ OR Produced Identification
Type of Identification Produced

Print, Type, or Stamp Commissioned Name of Notary Public

MY COMMISSION # DD 315263
EXPIRES: June 16, 2008
Bonded Thru Notary Public Underwriters

STATE OF FLORIDA
COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this 18th day of January, 2007 by ROGER KURTZ, as Vice President of GULFSTREAM BUSINESS BANK, a Florida banking corporation, on behalf of the corporation.

_____
Signature of Notary Public-State of Florida

_____
Print, Type, or Stamp Commissioned Name of Notary Public

JAMES REYER
MY COMMISSION # DD 315263
EXPIRES: June 16, 2008
Bonded Thru Notary Public Underwriters

My Commission Expires:
Personally Known _____ OR Produced Identification
Type of Identification Produced

Y:\GULB020\_Second Mod\Guaranty Release and reaffirmation.doc

3



# *James N. Reyer, Attorney at Law*

*5301 North Federal Highway, Suite 130*
*Boca Raton, FL 33487*
*561-241-9003*
*Fax: 561-988-9892*

## FAX TRANSMISSION COVER SHEET

**Date:**      *January 18, 2007*

**To:**        *Homes of Distinction Real Estate*
               *ATT: Mr. Terry R. Eichas*

**Fax:**       *272-1079*

**Re:**        *The Final Step.......................*

**Sender:**    *James N. Reyer, Attorney at Law*

---

*YOU SHOULD RECEIVE 4 PAGE(S), INCLUDING THIS COVER SHEET. IF*
*YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL 561-241-9003.*

---

CONFIDENTIALITY NOTE: The information contained in this facsimile message is legally privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify immediately by telephone and return the original message to us at the address listed above via the United States Postal Service. Thank you.

**A. Settlement Statement**

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

| B.   Type of Loan | | | | |
|---|---|---|---|---|
| 1. ☐ FHA    2. ☐ FmHA    3. ☒ Conv. Unins. | 6. File Number | 7. Loan Number | | 8. Mortgage Insurance Case Number |
| 4. ☐ VA    5. ☐ Conv. Ins. | 18.151212 | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs.   Amounts paid to and by the settlement agent are shown.   Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D.   NAME OF BORROWER: | E.   NAME OF SELLER: | F.   NAME OF LENDER: |
|---|---|---|
| DELRAY BEACH REALTY GROUP, INC. | FRED J. GERHARDT | SouthTrust Bank of Florida, National Assoc. |
| | | LENDER'S ADDRESS: P.O. Box 460 |
| BORROWER'S ADDRESS: P.O. Box 891 Delray Beach, FL 33444 | SELLER'S ADDRESS: 901 E. CAMINO REAL #38 BOCA RATON, FL 33432 | Boynton Beach, FL 33425-0460 |
| | | H.  SETTLEMENT AGENT: CHRISTOPHER J. EMA, ESQ. |
| G.  PROPERTY LOCATION: 640 E. ATLANTIC AVENUE DELRAY BEACH, FL 33444 | PLACE OF SETTLEMENT: 2600 NE 14TH ST.CAUSEWAY POMPANO BEACH, FL 33062 | MacLEAN & EMA 2600 NE 14TH ST.CAUSEWAY POMPANO BEACH, FL 33062 |

I.  SETTLEMENT DATE:  11/01/96

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 480,000.00 | 401. Contract sales price | 480,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 11,766.50 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes           to | | 406. City/town taxes           to | |
| 107. County taxes    11/01/96 to  12/31/96 | 2,049.78 | 407. County taxes    11/01/96 to  12/31/96 | 2,049.78 |
| 108. Assessments           to | | 408. Assessments           to | |
| 109. | | 409. | |
| 110. Solid Waste    11/01/96 to 09/30/97 | 1,522.16 | 410. Solid Waste    11/01/96 to 09/30/97 | 1,522.16 |
| 111. Storm Water Utility  11/01/96 to 09/30/97 | 361.95 | 411. Storm Water Utility  11/01/96 to 09/30/97 | 361.95 |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** ▶ | 495,700.39 | **420. GROSS AMOUNT DUE TO SELLER** ▶ | 483,933.89 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 5,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 360,000.00 | 502. Settlement charges to seller (line 1400) | 38,254.99 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 192,934.75 |
| | | Legg Mason | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. Prepaid Deposit | 1,800.00 | 507. | |
| 208. | | 508. Water Bill | 530.00 |
| 209. | | 509. 1996 Real Estate Taxes | 14,357.64 |
| 209a Security Deposits | 5,367.00 | 509a Security Deposits | 5,367.00 |
| 209b | | 509b | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes           to | | 510. City/town taxes           to | |
| 211. County taxes           to | | 511. County taxes           to | |
| 212. Assessments           to | | 512. Assessments           to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL AMOUNTS PAID BY OR IN BEHALF OF BORROWER** ▶ | 372,167.00 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER** ▶ | 251,444.38 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 495,700.39 | 601. Gross amount due to seller (line 420) | 483,933.89 |
| 302. Less amounts paid by/for borrower (line 220) | ( 372,167.00) | 602. Less reductions in amount due seller (line 520) | ( 251,444.38) |
| 303. CASH  ☒ From ☐ To    BORROWER ▶ | 123,533.39 | 603. CASH ☒To    ☐ From    SELLER ▶ | 232,489.51 |

PAGE 1

HUD-1 (3-86) RESPA, HB 4305.2

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT

PAGE 2

| L.   Settlement Charges | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|
| 700.  TOTAL SALES/BROKER'S COM. based on price $   480,000.00 @     6.000 % =     28,800.00 | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. $      28,800.00 | to Keller Williams Realty | | |
| 702. $ | to | | |
| 703.  Commission paid at Settlement | | | 28,800.00 |
| 704. | | | |
| 800.  Items Payable In Connection With Loan | | | |
| 801.  Loan Origination Fee     1.000 % | to SouthTrust Bank of     Florida, National Assoc. | 3,600.00 | |
| 802.  Loan Discount           % | | | |
| 803.  Appraisal Fee | to Anderson & Carr | 2,300.00 | |
| 804.  Credit Report | to | | |
| 805.  Lender's Inspection Fee | | | |
| 806.  Environmental Report | to Vista Environmental | 160.00 | |
| 807.  Lender's Atty Fee | to Keith C. Austin, Jr. PA | 1,800.00 | |
| 808.  Future Satisfaction Fee | to SouthTrust Bank of     Florida, National Assoc. | 25.00 | |
| 809.  Ins. Monitoring Fee | to SouthTrust Bank of     Florida, National Assoc. | 36.00 | |
| 810.  Tax Service Fee | to SouthTrust Bank of     Florida, National Assoc. | 59.00 | |
| 811.  Flood Cert. Fee | to SouthTrust Bank of     Florida, National Assoc. | 14.50 | |
| 900.  Items Required By Lender To Be Paid In Advance | | | |
| 901.  Interest from         to         @ $ 88.7672     /day | | | |
| 902.  Mortgage Insurance Premium for         months to | | | |
| 903.  Hazard Insurance Premium for         years  to | | | |
| 904.  Flood Ins Prem | | | |
| 905. | | | |
| 1000.  Reserves Deposited With Lender | | | |
| 1001.  Hazard insurance         months@$         per month | | | |
| 1002.  Mortgage insurance         months@$         per month | | | |
| 1003.  City property taxes         months@$         per month | | | |
| 1004.  County property taxes         months@$         per month | | | |
| 1005.  Annual assessments         months@$         per month | | | |
| 1006.         months@$         per month | | | |
| 1007.         months@$         per month | | | |
| 1008.         months@$         per month | | | |
| 1100.  Title Charges | | | |
| 1101.  Settlement or closing fee | to MacLean and Ema | 150.00 | |
| 1102.  Abstract or title search | to Attys' Title Ins. Fund | | 55.00 |
| 1103.  Title examination | to MacLean and Ema | 50.00 | |
| 1104.  Title insurance binder | to | | |
| 1105.  Document preparation | to | | |
| 1106.  Notary fees | to | | |
| 1107.  Attorney's fees | to James N. Reyer/MacLean and Ema | 850.00 | 1,500.00 |
|       (includes above items numbers:                    ) | | | |
| 1108.  Title insurance | to MacLean and Ema | 25.00 | 2,475.00 |
|       (includes above items numbers:                    ) | | | |
| 1109.  Lender's coverage:Risk Premium $     25.00 INS AMT:     360,000.00 | | | |
| 1110.  Owner's coverage:Risk Premium $   2,475.00 INS AMT:     480,000.00 | | | |
| 1110a  Endorsements: FF9-250.00; ALTA 6-25.00; ALTA 8.1-25.00; | | 300.00 | |
| 1111.  Recertification Fee | to MacLean and Ema | 75.00 | |
| 1112.  Abstract Processing Fees | to MacLean and Ema | | 175.00 |
| 1113.  Tax/Lien Search | to Florida Tax Service,Inc. | | 35.00 |
| 1200.  Government Recording and Transfer Charges | | | |
| 1201.  Recording fees:  Deed $ 6.60;         Mortgage(s) $38.10;         Releases $ | | 44.70 | |
| 1202.  City/county tax/stamps: Deed $         Mortgage(s) $ 720.00 | | 720.00 | |
| 1203.  State tax/stamps: Deed $ 3,360.00;     Mortgage(s) $ 1,260.00 | | 1,260.00 | 3,360.00 |
| 1204.  Satisfaction | to Clerk of the Court | | 19.80 |
| 1205.  Cert. of G.S. | to Clerk of the Court | 11.10 | |
| 1300.  Additional Settlement Charges | | | |
| 1301.  Survey | to O'Brien, Suiter, et al | *P.O.C.* | |
| 1302.  Pest inspection | to | | |
| 1303.  Courier Fees | to MacLean and Ema | 25.00 | 15.00 |
| 1304.  Disbursement Costs | to James N. Reyer | 125.00 | |
| 1305.  Violation Escrow | | | 560.00 |
| 1306.  Striebel Atty Fees | to MacLean and Ema | | 1,260.19 |
| 1307. | | | |
| 1308.  Additional Expenses         ** See Attached Addendum ** | | 136.20 | |
| 1400.  Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | 11,766.50 | 38,254.99 |

I have carefully reviewed the HUD - 1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and
disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.
DELRAY BEACH REALTY GROUP, INC.

BY: _____ Borrower          _____ Seller
                                                FRED J. GERHARDT

BY: _____ Borrower          _____ Seller

The HUD - 1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accord-
ance with this statement.
                                                 _____ Settlement Agent          11/1/96     DATE: 11/01/96

WARNING:  It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a
fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

**Miriam B. Walling, CPA, PA**
**355 NE 5th Avenue, Suite 6**
**Delray Beach, FL 33483-5542**
**561-272-5868**

March 22, 2007

**CONFIDENTIAL**

Terry Eichas
86 MacFarlnae Drive 8-H
Delray Beach, FL 33483

Dear Shareholder:

We have prepared the enclosed copy of Form 1120S, Schedule K-1 for Delray Beach Realty
Group, Inc.. It contains your share of the corporation's items of income/loss, credits and
deductions, and other information for the corporation's tax year ended December 31, 2006.
These items are to be reported on your federal income tax return; therefore, this Schedule should
be retained with your tax records and documentation.

Also enclosed is state K-1 information, if applicable. This information should also be retained
with your tax records and documentation.

If you have any questions or if we can be of assistance in any way, please do not hesitate to call.

Sincerely,


Miriam B. Walling, CPA, PA


TRUSTEE EXHIBIT
Blumberg No. 5195

671106

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0130

**Schedule K-1**
**(Form 1120S)**
Department of the Treasury
Internal Revenue Service

**2006**

For calendar year 2006, or tax
year beginning _____
ending _____

## Shareholder's Share of Income, Deductions, Credits, etc.

▶ See back of form and separate instructions.

| Part I | Information About the Corporation |
|---|---|

**A** Corporation's employer identification number
■■■■■9419

**B** Corporation's name, address, city, state, and ZIP code

**Delray Beach Realty Group, Inc.**

**441 SE 2nd Street**
**Delray Beach          FL 33483**

**C** IRS Center where corporation filed return

**Ogden, UT  84201**

**D** ☐ Tax shelter registration number, if any _____
**E** ☐ Check if Form 8271 is attached

| Part II | Information About the Shareholder |
|---|---|

**F** Shareholder's identifying number
■■■■■2719

**G** Shareholder's name, address, city, state and ZIP code

**Terry Eichas**
**86 MacFarlnae Drive 8-H**

**Delray Beach          FL 33483**

**H** Shareholder's percentage of stock
ownership for tax year . . . . . . . . . . . . . . . . . . . .   **5.604795** %

For IRS Use Only

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| # | Item | | | # | Item |
|---|---|---|---|---|---|
| 1 | Ordinary business income (loss) | | | 13 | Credits |
| 2 ★ | Net rental real estate income (loss)    -7,170 | | | | |
| 3 | Other net rental income (loss) | | | | |
| 4 | Interest income | | | | |
| 5a | Ordinary dividends | | | | |
| 5b | Qualified dividends | | | 14 | Foreign transactions |
| 6 | Royalties | | | | |
| 7 | Net short-term capital gain (loss) | | | | |
| 8a | Net long-term capital gain (loss) | | | | |
| 8b | Collectibles (28%) gain (loss) | | | | |
| 8c | Unrecaptured section 1250 gain | | | | |
| 9 | Net section 1231 gain (loss) | | | | |
| 10 | Other income (loss) | | | 15 A | Alternative minimum tax (AMT) items    17 |
| 11 | Section 179 deduction | | | 16 C★ | Items affecting shareholder basis    201 |
| 12 | Other deductions | | | | |
| | | | | 17 | Other information |

\* See attached statement for additional information.

For Privacy Act and Paperwork Reduction Act Notice, see Instructions for Form 1120S.

DAA

Schedule K-1 (Form 1120S) 2006

This list identifies the codes used on Schedule K-1 for all shareholders and provides summarized reporting information for shareholders who file Form 1040. For detailed reporting and filing information, see the separate Shareholder's Instructions for Schedule K-1 and the instructions for your income tax return.

| | | | Report on |
|---|---|---|---|
| 1. | Ordinary business income (loss). You must first determine whether the income (loss) is passive or nonpassive. Then enter on your return as follows: | | |
| | Passive loss | | See the Shareholder's Instructions |
| | Passive income | | Schedule E, line 28, column (g) |
| | Nonpassive loss | | Schedule E, line 28, column (h) |
| | Nonpassive income | | Schedule E, line 28, column (j) |
| 2. | Net rental real estate income (loss) | | See the Shareholder's Instructions |
| 3. | Other net rental income (loss) | | |
| | Net income | | Schedule E, line 28, column (g) |
| | Net loss | | See the Shareholder's Instructions |
| 4. | Interest income | | Form 1040, line 8a |
| 5a. | Ordinary dividends | | Form 1040, line 9a |
| 5b. | Qualified dividends | | Form 1040, line 9b |
| 6. | Royalties | | Schedule E, line 4 |
| 7. | Net short-term capital gain (loss) | | Schedule D, line 5, column (f) |
| 8a. | Net long-term capital gain (loss) | | Schedule D, line 12, column (f) |
| 8b. | Collectibles (28%) gain (loss) | | 28% Rate Gain Worksheet, line 4 (Schedule D instructions) |
| 8c. | Unrecaptured section 1250 gain | | See the Shareholder's Instructions |
| 9. | Net section 1231 gain (loss) | | See the Shareholder's Instructions |
| 10. | Other income (loss) | | |
| | Code | | |
| A | Other portfolio income (loss) | | See the Shareholder's Instructions |
| B | Involuntary conversions | | See the Shareholder's Instructions |
| C | Sec. 1256 contracts & straddles | | Form 6781, line 1 |
| D | Mining exploration costs recapture | | See Pub. 535 |
| E | Other income (loss) | | See the Shareholder's Instructions |
| 11. | Section 179 deduction | | See the Shareholder's Instructions |
| 12. | Other deductions | | |
| A | Cash contributions (50%) | | |
| B | Cash contributions (30%) | | |
| C | Noncash contributions (50%) | | |
| D | Noncash contributions (30%) | | See the Shareholder's Instructions |
| E | Capital gain property to a 50% organization (30%) | | |
| F | Capital gain property (20%) | | |
| G | Investment interest expense | | Form 4952, line 1 |
| H | Deductions—royalty income | | Schedule E, line 18 |
| I | Section 59(e)(2) expenditures | | See the Shareholder's Instructions |
| J | Deductions—portfolio (2% floor) | | Schedule A, line 22 |
| K | Deductions—portfolio (other) | | Schedule A, line 27 |
| L | Preproductive period expenses | | See the Shareholder's Instructions |
| M | Commercial revitalization deduction from rental real estate activities | | See Form 8582 Instructions |
| N | Reforestation expense deduction | | See the Shareholder's Instructions |
| O | Domestic production activities information | | See Form 8903 Instructions |
| P | Qualified production activities income | | Form 8903, line 7 |
| Q | Employer's W-2 wages | | Form 8903, line 13 |
| R | Other deductions | | See the Shareholder's Instructions |
| 13. | Credits | | |
| A | Low-income housing credit (section 42(j)(5)) | | |
| B | Low-income housing credit (other) | | See the Shareholder's Instructions |
| C | Qualified rehabilitation expenditures (rental real estate) | | |
| D | Other rental real estate credits | | |
| E | Other rental credits | | |
| F | Undistributed capital gains credit | | Form 1040, line 70, check box a |
| G | Credit for alcohol used as fuel | | |
| H | Work opportunity credit | | See the Shareholder's Instructions |
| I | Welfare-to-work credit | | |
| J | Disabled access credit | | |
| K | Empowerment zone and renewal community employment credit | | Form 8844, line 3 |

| | | | Code | Report on |
|---|---|---|---|---|
| L | Credit for increasing research activities | | | |
| M | New markets credit | | | See the Shareholder's Instructions |
| N | Credit for employer social security and Medicare taxes | | | |
| O | Backup withholding | | | Form 1040, line 64 |
| P | Other credits | | | See the Shareholder's Instructions |
| 14. | Foreign transactions | | | |
| A | Name of country or U.S. possession | | | |
| B | Gross income from all sources | | | Form 1116, Part I |
| C | Gross income sourced at shareholder level | | | |
| | Foreign gross income sourced at corporate level | | | |
| D | Passive | | | |
| E | Listed categories | | | Form 1116, Part I |
| F | General limitation | | | |
| | Deductions allocated and apportioned at shareholder level | | | |
| G | Interest expense | | | Form 1116, Part I |
| H | Other | | | Form 1116, Part I |
| | Deductions allocated and apportioned at corporate level to foreign source income | | | |
| I | Passive | | | |
| J | Listed categories | | | Form 1116, Part I |
| K | General limitation | | | |
| | Other information | | | |
| L | Total foreign taxes paid | | | Form 1116, Part II |
| M | Total foreign taxes accrued | | | Form 1116, Part II |
| N | Reduction in taxes available for credit | | | Form 1116, line 12 |
| O | Foreign trading gross receipts | | | Form 8873 |
| P | Extraterritorial income exclusion | | | Form 8873 |
| Q | Other foreign transactions | | | See the Shareholder's Instructions |
| 15. | Alternative minimum tax (AMT) items | | | |
| A | Post-1986 depreciation adjustment | | | |
| B | Adjusted gain or loss | | | See the Shareholder's Instructions and the Instructions for Form 6251 |
| C | Depletion (other than oil & gas) | | | |
| D | Oil, gas, & geothermal—gross income | | | |
| E | Oil, gas, & geothermal—deductions | | | |
| F | Other AMT items | | | |
| 16. | Items affecting shareholder basis | | | |
| A | Tax-exempt interest income | | | Form 1040, line 8b |
| B | Other tax-exempt income | | | |
| C | Nondeductible expenses | | | See the Shareholder's Instructions |
| D | Property distributions | | | |
| E | Repayment of loans from shareholders | | | |
| 17. | Other information | | | |
| A | Investment income | | | Form 4952, line 4a |
| B | Investment expenses | | | Form 4952, line 5 |
| C | Qualified rehabilitation expenditures (other than rental real estate) | | | See the Shareholder's Instructions |
| D | Basis of energy property | | | See the Shareholder's Instructions |
| E | Recapture of low-income housing credit (section 42(j)(5)) | | | Form 8611, line 8 |
| F | Recapture of low-income housing credit (other) | | | Form 8611, line 8 |
| G | Recapture of investment credit | | | See Form 4255 |
| H | Recapture of other credits | | | See the Shareholder's Instructions |
| I | Look-back interest—completed long-term contracts | | | See Form 8697 |
| J | Look-back interest—income forecast method | | | See Form 8866 |
| K | Dispositions of property with section 179 deductions | | | |
| L | Recapture of section 179 deduction | | | |
| M | Section 453(l)(3) information | | | |
| N | Section 453A(c) information | | | |
| O | Section 1260(b) information | | | See the Shareholder's Instructions |
| P | Interest allocable to production expenditures | | | |
| Q | CCF nonqualified withdrawal | | | |
| R | Information needed to figure depletion—oil and gas | | | |
| S | Amortization of reforestation costs | | | |
| T | Other information | | | |

01681  Delray Beach Realty Group, Inc.                                          3/22/2007  12:59 PM
■■■■■9419                                **Federal Statements**
FYE: 12/31/2006                            **Terry Eichas**
                                         SSN: ■■■■■2719

### Schedule K-1, Box 16, Code C - Nondeductible Expenses

| Description | Amount |
|---|---|
| Key Man Life Insurance | $           201 |
| Total | $           201 |

**Shareholder Rental Report**

**Terry Eichas**

**SSN/EIN:** ████2719

FYE: 12/31/2006

3/22/2007   12:59 PM

## Schedule K-1, Rental Real Estate, Other Rental and Royalties

| Description | Rental Real Estate Box 2 | Other Rental Box 3 | Royalties Box 6 |
|---|---|---|---|
| 34 SE 7th Ave Condominiums | -6,087 | | |
| 640 E Atlantic Ave Commercial Building | -1,083 | | |
| **Shareholder Total** | -7,170 | 0 | 0 |

**███419**

# Shareholder Weighted Average Computation

FYE: 12/31/2006

---

**McGloin, Richard**    SSN/EIN: 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

| From | To | Days | | Shares Owned | | Total Shares | | Days In Year | | Percentage |
|------|-----|------|---|--------------|---|--------------|---|--------------|---|------------|
| 1/01/06 | 3/08/06 | 67 | X | 359.000 | / | 1,000.000 | / | 365 | = | 6.589863 % |
| 3/09/06 | 12/31/06 | 298 | X | 359.000 | / | 702.000 | / | 365 | = | 41.752332 % |
| | | | | | | Shareholder Total Percentage | | | | 48.342195 % |

---

**Eichas, Terry**    SSN/EIN: 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

| From | To | Days | | Shares Owned | | Total Shares | | Days In Year | | Percentage |
|------|-----|------|---|--------------|---|--------------|---|--------------|---|------------|
| 1/01/06 | 3/08/06 | 67 | X | 299.000 | / | 1,000.000 | / | 365 | = | 5.488493 % |
| 3/09/06 | 12/31/06 | 298 | X | 1.000 | / | 702.000 | / | 365 | = | 0.116302 % |
| | | | | | | Shareholder Total Percentage | | | | 5.604795 % |

---

**Goodmanson, David**    SSN/EIN: 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

| From | To | Days | | Shares Owned | | Total Shares | | Days In Year | | Percentage |
|------|-----|------|---|--------------|---|--------------|---|--------------|---|------------|
| 1/01/06 | 3/08/06 | 67 | X | 342.000 | / | 1,000.000 | / | 365 | = | 6.277808 % |
| 3/09/06 | 12/31/06 | 298 | X | 342.000 | / | 702.000 | / | 365 | = | 39.775202 % |
| | | | | | | Shareholder Total Percentage | | | | 46.053010 % |