

# RICHARDSON & TYNAN, P.L.C.

LAW OFFICES

8142 NORTH UNIVERSITY DRIVE

TAMARAC, FLORIDA 33321

KEVIN P. TYNAN

NOLA M. RICHARDSON

TELEPHONE

(954) 721-7300

March 1, 2010

Shanee L. Clark, Esq.
Bar Counsel, The Florida Bar
651 East Jefferson Street
Tallahassee, Fl 32399-2300

Re:    Complaint against Steven G. Goerke, Esq.
       TFB File No. 2010-51,067 (15F)

Dear Ms. Clark:

Please note my appearance in the above-captioned matter on behalf of Steven G. Goerke, Esquire, and thank you for the opportunity to respond to the complaint submitted by Terry Eichas and the extension to do so. Mr. Eichas' complaint that Mr. Goerke did not properly represent him during a bankruptcy proceeding is wholly without merit and should be summarily dismissed.

My client, Steven Goerke, a Board Certified Civil Trial Lawyer, was retained on or about May 18, 2009 to assist Mr. Eichas with the filing of a voluntary Chapter 7 bankruptcy proceeding. Pursuant to a written retainer agreement, Mr. Eichas was obligated to pay legal fees in the amount of $1,501.00 and costs of $299.00. Mr. Eichas provided this sum prior to the commencement of representation under the terms of the retainer agreement. The retainer agreement (which was included in the materials submitted by Mr. Eichas) clearly states that Mr. Goerke would prepare all the required bankruptcy schedules and related documents and pleadings, would attend the 341 creditors' meeting and a confirmation hearing, if needed, and would counsel his client regarding the bankruptcy process. Mr. Goerke properly performed all of these services.

The retainer agreement also specifically provided that should an adversary proceeding be filed, Mr. Goerke would be allowed to withdraw from representation. An adversary proceeding was filed against Mr. Eichas which proceeding claimed that Mr. Eichas had been less than fully candid concerning the disclosure of his assets and financial affairs. As agreed to upon being retained, the filing of an adversary proceeding resulted in Mr. Goerke filing a motion to withdraw which was granted by the court.

Now that Mr. Goerke has withdrawn and things appear to not be going well in the bankruptcy proceeding, Mr. Eichas seeks to blame his trouble on his prior legal counsel rather than accept the blame for not fully revealing his assets and financial affairs to Mr. Goerke prior to the filing of the bankruptcy. In fact, in an e-mail to Mr. Goerke dated May 19, 2008, more than one year prior to his bankruptcy filing in June, 2009, Mr. Eichas stated to Mr. Goerke that the only asset he had to protect was the "885" (i.e., an interest in an office building held in a limited liability company), that "everything else" was gone, and that, while Mr. Eichas didn't believe he would be penniless the rest of this life, he would be penniless for the next few years.

1 of 3 pages

Mr. Eichas makes it appear that he is unsophisticated and that he heavily relied upon Mr. Goerke for all decisions related to the bankruptcy, that he felt rushed in supplying information to Mr. Goerke and that this led to Mr. Eichas being accused of making misrepresentations in his bankruptcy petition. Mr. Eichas is incorrect in each of these assertions. Firstly, a careful review of the bankruptcy petition reveals that Mr. Eichas is and was a savvy businessman having previously amassed three (3) million dollars in assets (mostly in real estate but also in horses and related businesses). Secondly, it took almost a month to prepare the appropriate bankruptcy petition and schedules. There is a voluminous amount of e-mails back and forth between Mr. Eichas and Mr. Goerke regarding what needed to be listed and how the asset was going to be listed. These e-mails included Mr. Goerke's request for information from Mr. Eichas regarding corporations on which Mr. Eichas was listed as officer or director that had not been disclosed to Mr. Goerke which Mr. Goerke uncovered while investigating Mr. Eichas's assets, court records, and real property holdings prior to the bankruptcy filing. The complaint only includes a small sampling of the e-mail exchanges. If necessary we are glad to supply a copy of any and all e-mails that are available to us. In addition to the e-mails there were multiple phone calls and office visits.

At the time that the bankruptcy petition was filed, Mr. Goerke believed that Mr. Eichas was fully conversant in what was being filed and that he had approved each and every disclosure that was made and the manner in which the disclosure was made. Mr. Eichas was under no deadline to file bankruptcy. The timing of the bankruptcy filing was solely Mr. Eichas', and it was he and he alone who was pushing for the bankruptcy filing. In fact, the only time Mr. Goerke can ever recall Mr. Eichas being under a time constraint of any kind was when Mr. Eichas was gathering documents requested by the trustee's attorney and Mr. Eichas wanted to finish the document production before he went on vacation to Mexico. Moreover, this is not Mr. Eichas' first experience with filing for bankruptcy. Mr. Goerke represented Mr. Eichas in his prior personal bankruptcy which was filed in 1993.

Mr. Eichas asserts that one of the problems that arose had to do with a truck that he allegedly returned to the lien holder. Prior to the filing of the bankruptcy, Mr. Eichas told Mr. Goerke that he wanted to return the truck to the person who held the lien on the truck. Mr. Goerke said that he could return the truck to the lienholder. Based solely upon the information provided by Mr. Eichas, the voluntary repossession was revealed in the bankruptcy petition. However, Mr. Eichas had not told Mr. Goerke the truth about the truck. In reality, as later discovered by the trustee (and raised as an issue in the adversary proceeding), **Mr. Eichas secured a release from the lien holder and used the truck as a down payment for the purchase of a replacement vehicle that he put in his brother's name.** Mr. Eichas drove this new vehicle and provided cash to his brother to make payments on the vehicle. None of the true story was revealed to Mr. Goerke until after the bankruptcy was filed. Had Mr. Goerke been informed of this subterfuge he would have told his client that it was improper and made sure that the new vehicle was properly disclosed and listed.

Mr. Goerke communicated with Mr. Eichas extensively about the possibility of filing amendments to Mr. Eichas' bankruptcy schedules and statements of financial affairs. Unfortunately, these discussions only uncovered more and more assets and asset transfers which were not revealed to Mr. Goerke and not disclosed in Mr. Eichas' bankruptcy filing. Any amendment filed with the bankruptcy court was required to be verified by Mr. Eichas and, if

filed by Mr. Goerke, would be required to include all information which Mr. Eichas revealed to Mr. Goerke subsequent to the filing of the bankruptcy but prior to the date of the amendment. Included in this information would be matters not known to the trustee and not the subject of the adversary proceeding, so that had Mr. Eichas filed amendments to his bankruptcy schedules and statements of financial affairs which truly and accurately portrayed his financial status, the falsity of the original bankruptcy filing would have been even more pronounced.

As is noted above, an adversary proceeding was initiated due to certain misstatements made by Mr. Eichas in his bankruptcy petition. Please note that the petition was verified by Mr. Eichas and that the only source of information for Mr. Goerke regarding Mr. Eichas' assets came directly from Mr. Eichas. Mr. Goerke attempted to settle the claims being asserted by the Trustee prior to the filing of the actual adversary proceeding. Mr. Goerke also offered to assist Mr. Eichas in drafting an answer to the adversary proceeding after it was filed. Notwithstanding the provision in his retainer agreement that he could withdraw if an adversary proceeding was filed, Mr. Goerke took these steps because he hoped to secure a successful resolution of the adversary proceeding. When he was unable to secure a settlement, he referred Mr. Eichas to quality legal counsel who he believed would be the correct person to provide assistance to Mr. Eichas and then filed his motion to withdraw. Mr. Eichas chose not to retain new counsel at that time and was unsuccessful in his attempts to personally settle the matter with the trustee's attorney.

Mr. Goerke was allowed to withdraw on November 30, 2009 and this complaint was mailed to the Bar on or about December 30, 2009. I am enclosing a copy of Mr. Goerke's letter of October 5, 2009 to the trustee's counsel which discusses the issues raised in the adversary proceeding, a copy of the e-mail exchange between Mr. Goerke and Mr. Eichas regarding the need to file an Answer and his willingness to assist Mr. Eichas in preparing a pro se Answer to the adversary proceeding, and a copy of Mr. Goerke's letter of October 29, 2009 which discusses Mr. Goerke's withdrawal. Copies of the adversary proceeding and the Answer thereto are available should you desire to review same. It is noteworthy that subsequent to the filing of this complaint, Mr. Eichas retained the services of the law firm to whom Mr. Goerke referred him.

A careful reading of Mr. Eichas' complaint and the timing of same clearly show that Mr. Eichas is upset about his predicament and that he attempts to blame Mr. Goerke for such predicament, rather than accept responsibility for his own actions. It is my belief that Mr. Eichas's complaint is without merit and should be summarily dismissed. Please let me know if I can be of any further assistance.

Very Truly Yours,

KEVIN P. TYNAN, ESQ.

KPT/itm

cc:    Steven G. Goerke, Esq.
       Terry Eichas

Pursuant to Rule 3-7.1(f), Rules of Discipline, you must execute the appropriate disclosure paragraph below and return the form to this office by **February 11, 2010**. The rule provides that the nature of the charges be stated in the notice to your firm; however, we suggest that you attach a copy of the complaint.

## CERTIFICATE OF DISCLOSURE

I HEREBY CERTIFY that on this __2ⁿᵈ__ day of __February__, 200__2010__, a true copy of the foregoing disclosure was furnished to __Mitchell T. Moore, Esq.__, a member of my present law firm of __Moore Law Offices, P.A.__, and, if different, to _____, a member of the law firm of _____, with which I was associated at the time of the act(s) giving rise to the complaint in The Florida Bar File No. 2010-51,067 (15F).

_____
Steven G Goerke

## CERTIFICATE OF DISCLOSURE
(Corporate/Government Employment)

I HEREBY CERTIFY that on this _____ day of _____, 200___, a true copy of the foregoing disclosure was furnished to _____, my supervisor at _____ (name of agency), with which I was associated at the time of the act(s) giving rise to the complaint in The Florida Bar File No. 2010-51,067 (15F).

_____
Steven G Goerke

## CERTIFICATE OF NON-LAW FIRM AFFILIATION
(Sole Practitioner)

I HEREBY CERTIFY to The Florida Bar on this _____ day of _____, 200___, that I am not presently affiliated with a law firm and was not affiliated with a law firm at the time of the act(s) giving rise to the complaint in The Florida Bar File No. 2010-51,067 (15F).

_____
Steven G Goerke

Attorneys At Law
# MCRAE LAW OFFICES, P.A.
5300 West Atlantic Avenue, Suite 412
**Delray Beach, Florida 33484**
Phone: 561-638-6600
Fax: 888-308-6020

Mitchell T. McRae *
Steven G. Goerke ▪

**OF COUNSEL**
Anna Marie Billingsley °

---

\* Board Certified Business Litigation Lawyer
▪ Board Certified Civil Trial Lawyer

---

° Board Certified Real Estate Lawyer

October 5, 2009

Michael R. Bakst, Esq.
Ruden McClosky
222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401

Re:    Terry R. Eichas
       Case No. 09-21514-BKC-EPK

Dear Mr. Bakst:

I have spoken at length with Mr. Eichas regarding this matter. Mr. Eichas has at all times remained and still remains adamant that he is completely broke and not in position to borrow money to try to resolve this matter.

The documents previously provided to you demonstrate that the $1,200,000.00 received on the sale of Mr. Eichas' interest in Delray Beach Realty Group was all deposited into his personal bank account. The personal account statements reflect deposit of all of the funds. Mr. Eichas also provided you copies of the checks that evidence what the money was used for.

The statements do reflect that some of the money was wired to Homes of Distinction and some to 885 Realty upon its receipt. The statements and checks for these accounts were also provided to you. The full closing files for Mr. Eichas' real estate investments were also provided. When things were going well, Mr. Eichas was paying approximately $25,000.00 per month in mortgage payments on his various properties.

The purchase and sale of horses is evidenced by the checks written to purchase the horses and the deposits made into the horse account upon the sale. The checks are the only evidence of the purchase and sale of the horses as ownership of horses is not reflected by a title or other form of registration.

A significant amount of money was invested in renovations made to properties. The strip center in Avon Park was foreclosed. Suntrust has sought relief from the automatic stay in this action to complete the foreclosure on Mr. Eichas' home. Mr. Eichas invested large sums of money in these properties.

Due to changes in the tax laws, Mr. Eichas is entitled to a refund from the IRS in the approximate sum of $12,000.00. When he was unable to pay the taxes on it, Mr. Eichas gave his one-half

Michael R. Bakst, Esq.
October 5, 2009
Page 2

interest in one of the Avon Park lots to Pricilla Harris in exchange for her paying the 2008 taxes. Ms. Harris cannot support the property and is willing to execute a quit claim deed to the Trustee of this interest.

Mr. Eichas is simply not in position to pay any money or provide any property beyond the items set forth in the preceding paragraph as he does not have anything of value.

McRAE LAW OFFICES, P.A.

By: _____
      Steve Goerke

**Steven G. Goerke, Esquire**
5300 W Atlantic Avenue, Suite 412
Delray Beach, FL 33484
Phone: (561) 638-6600
Fax:    (561) 638-6617
e-mail: SGoerke@mcraelawfirm.com

Law Offices of
# McRae Law Offices, P.A.



| To: | Michael R. Bakst, Esq. | **From:** | Steven G. Goerke |
|---|---|---|---|
| **Fax:** | **561-514-3423** | **Pages:** | 3 |
| **Phone:** | | **Date:** | October 5, 2009 |

**Subject:  Terry R. Eichas, Case No. 90-21514-EPK**

This facsimile contains privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this facsimile is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited.  If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service.  Thank you.

_____        Originals *will not* be sent by mail.

____X____        Originals *will* be sent by mail.

March 10, 2010

Shanee' Clark

651 East Jefferson St.

Tallahassee, Fl. 32399

RE: Complaint against Steven G. Goerke

TFB File No. 2010-51,067 (15F)

Response to the response:

My response to the letter dated 3/1 /2010 from attorney Kevin Tynan representing Steven Goerke is as follows. The problem in this case is not that I was dishonest as portrayed by Mr. Georke, but that Mr. Goerke did not properly advise me on certain matters that have caused me to be embroiled in litigation with the Bankruptcy Trustee.

My bankruptcy has not gone well since it was filed. Mr. Goerke did not properly advise me of the following matters that have now caused me problems:

1) Failed to advise me of the meaning of an "asset" as it is defined in the context of a bankruptcy.

2) Failed to inquire about my prior transfer of assets and failed to explain to me that my prior transfer of assets could be an issue in the bankruptcy.

Instead of reviewing the required books and records before I filed, Mr. Goerke reviewed them after filing but before the first meeting with the Trustee. Had he done as much discovery before filing, I would not be in this situation. Mr. Goerke failed to ask for documents that I would have readily provided to him and that would have shown what eventually was discovered by the Trustee. We had many conversations about my debts, but he did not ask me about prior transfer of assets and how they may effect my ability to obtain a discharge. Further, Mr. Goerke failed to request that I provide him the most basic of documents, such as check book registers, bank statements, and tax records. If he would have asked me about transfers or reviewed these documents, he would have seen the transfers and could have properly advised me before the petition was ever filed.

Mr. Goerke did e-mail me copies of draft petitions, schedules and Statement of Financial Affairs to review, but he did not give me an adequate explanation of what should be included in the "transfer" section of the Statement of Financial Affairs. I had nothing to hide, but the failure to give me this explanation has led to the trustee filing her lawsuit.

Mr. Goerke did know about the situation with the truck and my brother but didn't seem to be too concerned about it until a question was raised about it by the Trustee. This transfer was done far enough in advance of the filing that he could have called a time out, postponed the filing and dug deeper into the situation but he decided against that.

My whole complaint with this Attorney is that he did not prepare properly and investigate deep enough or educate me of all the facets needed to be done. This is certainly not a case where I refused to give information to him and then decided a few weeks later to turn everything over to the Trustee. The truth is that Mr. Goerke never asked for this information. It was his lack of organization, business practices and procedures that warrants this complaint.

The "sour grape" defense that Mr. Tynan and Mr. Goerke have insinuated about me makes a good decoy to avoid the questioning of Mr. Goerke as to why he did not investigate the lack of information that he alleges was withheld from him. He mentions an amendment to the filing which I was fine with, however that never transpired. It always seemed like it would be too much work to do the amendment and the letter he wrote was the only one presented to the Trustee and that went without response. I find myself looking back to the very beginning of this process and look directly at the person I hired to prepare this bankruptcy as the very person who let me down and leaves me now trying to defend myself for questions he never asked.

Sincerely,

Terry R. Eichas

Prepared with the assistance of counsel

Cc: Steven Goerke

LAW OFFICES

# RICHARDSON & TYNAN, P.L.C.

8142 NORTH UNIVERSITY DRIVE

TAMARAC, FLORIDA 33321

KEVIN P. TYNAN
NOLA M. RICHARDSON

TELEPHONE
(954) 721-7300

March 29, 2010

**Personal & Confidential**

Steven Goerke, Esq.
5300 W. Atlantic Ave., Suie 412
Delray Beach, FL 33484

Re:   Complaint against Steven G. Goerke, Esq.
      TFB File No. 2010-51,067 (15F)

Dear Steve:

Enclosed please find a copy of Ms. Clark's letter of March 26, 2010 which advises that she has summarily dismissed the above captioned matter. As you know this means that the grievance has been closed in your favor and without any adverse finding. Even though this matter is now closed, I still suggest that you keep a copy of this letter as some complainants try to refile their complaints and the bar only keeps their copy of the close out letter for one year post closure of the file.

As the bar has concluded this matter, my services are no longer necessary. It was a pleasure representing you. Please let me know if I can be of any future assistance.

Very Truly Yours,

KEVIN P. TYNAN, ESQ.

KPT/itm

# THE FLORIDA BAR

**651 EAST JEFFERSON STREET**
**TALLAHASSEE, FL 32399-2300**

JOHN F. HARKNESS, JR.
EXECUTIVE DIRECTOR

850/561/5600
WWW.FLORIDABAR.ORG

March 26, 2010

Mr. Terry Eichas
6926 Skyline Dr.
Delray Beach, FL 33446

Re:     Steven G. Goerke; The Florida Bar File No. 2010-51,067 (15F)

Dear Mr. Eichas:

All correspondence and documents submitted in this matter have been carefully reviewed. Your complaint alleges that Mr. Goerke failed to properly handle your bankruptcy and failed to adequately investigate your finances or ask pertinent questions to obtain the necessary information from you regarding your assets and business dealings.

Through counsel, Mr. Goerke asserts that his acumen as a bankruptcy attorney was not the issue as he previously handled a bankruptcy for you. He states that you deliberately withheld information, which led to an adversary proceeding being filed by the Trustee; and you were aware per the contract that he could withdraw in the event such a proceeding was filed. He further asserts that in spite of withdrawing he still attempted to assist you in settling the matter with the Trustee and/or filing a pro se answer, and ultimately referred you to an attorney experienced in adversary bankruptcy proceedings.

One of the considerations Bar Counsel must weigh in deciding whether to close a file or proceed further to seek disciplinary measures is the weight of the available evidence. If the Bar seeks to discipline the lawyer, it is required by Supreme Court ruling to show, by "clear and convincing" evidence that there has been a violation of one or more of the Rules Regulating The Florida Bar. Clear and convincing evidence has been defined as "evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." This burden of proof is heavier than the burden of proof required in an ordinary civil trial and could not be met based on the information provided.

There is insufficient evidence from the materials provided that Mr. Goerke has violated any of the rules adopted by the Supreme Court of Florida which govern attorney discipline. Accordingly, continued disciplinary proceedings in this matter are inappropriate and our file has been closed. The computer record will be purged and the file destroyed one year from the date of closing.

Sincerely,

*Shaneé L. Clark*

Shaneé L. Clark, Bar Counsel
Attorney Consumer Assistance Program
cc:     Mr. Kevin P. Tynan

SCANNED TO FILE

# THE FLORIDA BAR

651 EAST JEFFERSON STREET
TALLAHASSEE, FL 32399-2300

JOHN F. HARKNESS, JR.
EXECUTIVE DIRECTOR

850/561-5600
WWW.FLORIDABAR.ORG

January 27, 2010

Mr. Steven G Goerke
McRae Law Office P A
5300 W Atlantic Ave Ste 412
Delray Beach, FL 33484-8141

Re:     Terry Eichas; The Florida Bar File No. 2010-51,067 (15F)

Dear Mr. Goerke:

Enclosed is a copy of an inquiry/complaint and any supporting documents submitted by the above referenced complainant(s). Your response to this complaint is required under the provisions of Rule 4-8.4(g), Rules of Professional Conduct of the Rules Regulating The Florida Bar, and is due in our office by **February 11, 2010**. Responses should not exceed 25 pages and may refer to any additional documents or exhibits that are available on request. Failure to provide a written response to this complaint is in itself a violation of Rule 4-8.4(g). You are **further requested to furnish the complainant with a complete copy of your written response, including any documents submitted therewith.**

Please note that pursuant to Rule 3-7.1(b), Rules of Discipline, any reports, correspondence, papers, recordings and/or transcripts of hearings received from either you or the complainant(s) shall become a part of the public record in this matter and thus accessible to the public upon a disposition of this file. It should be noted that The Florida Bar is required to acknowledge the status of proceedings during the pendency of an investigation, if a specific inquiry is made and the matter is deemed to be in the public domain. Pursuant to Rule 3-7.1(f), Rules of Discipline, you are further required to complete and return the enclosed Certificate of Disclosure form.

Finally, the filing of this complaint does not preclude communication between the attorney and the complainant(s). Please review the enclosed Notice for information on submitting your response.

Sincerely,

Shaneé L. Clark, Bar Counsel
Attorney Consumer Assistance Program
ACAP Hotline 866-352-0707
Enclosures (Certificate of Disclosure, Notice of Grievance Procedures, Copy of Complaint, Notice - Mailing Instructions)

cc:     Terry Eichas

## NOTICE OF GRIEVANCE PROCEDURES

1.      The enclosed letter is an informal inquiry.   Your response is required under the provisions of The Rules Regulating The Florida Bar 4-8.4(g), Rules of Professional Conduct. Failure to provide a written response to this complaint is in itself a violation of Rule 4-8.4(g).   If you do not respond, the matter will be forwarded to the grievance committee for disposition in accordance with Rule 3-7.3 of the Rules of Discipline.

2.      Many complaints considered first by staff counsel are not forwarded to a grievance committee, as they do not involve violations of the Rules of Professional Conduct justifying disciplinary action.

3.      "Pursuant to Rule 3-7.1(a), Rules of Discipline, any response by you in these proceedings shall become part of the public record of this matter and thereby become accessible to the public upon the closure of the case by Bar counsel or upon a finding of no probable cause, probable cause, minor misconduct, or recommendation of diversion.  Disclosure during the pendency of an investigation may be made only as to status if a specific inquiry concerning this case is made and if this matter is generally known to be in the public domain."

4.      The grievance committee is the Bar's "grand jury."  Its function and procedure are set forth in Rule 3-7.4.  Proceedings before the grievance committee, for the most part, are non-adversarial in nature.  However, you should carefully review Chapter 3 of the Rules Regulating The Florida Bar.

5.      If the grievance committee finds probable cause, formal adversarial proceedings, which ordinarily lead to disposition by the Supreme Court of Florida, will be commenced under 3-7.6, unless a plea is submitted under Rule 3-7.9



# THE FLORIDA BAR

JOHN F. HARKNESS, JR.
EXECUTIVE DIRECTOR

651 EAST JEFFERSON STREET
TALLAHASSEE, FL 32399-2300

850/561-5600
WWW.FLORIDABAR.ORG

January 27, 2010

Mr. Terry Eichas
6926 Skyline Dr.
Delray Beach, FL 33446

Re:    Steven G Goerke; The Florida Bar File No. 2010-51,067 (15F)

Dear Mr. Eichas:

Enclosed is a copy of our letter to Mr. Goerke which requires a response to your complaint.

Once you receive Mr. Goerke's response, you have 10 days to file a rebuttal if you so desire.  If you decide to file a rebuttal, please send a copy to Mr. Goerke.  Rebuttals should not exceed 25 pages and may refer to any additional documents or exhibits that are available on request.  Please address any and all correspondence to me.  <u>Please note that any correspondence must be sent through the U.S. mail; we cannot accept faxed material.</u>

Please be advised that as an arm of the Supreme Court of Florida, The Florida Bar can investigate allegations of misconduct against attorneys, and where appropriate, request that the attorney be disciplined.  The Florida Bar cannot render legal advice nor can The Florida Bar represent individuals or intervene on their behalf in any civil or criminal matter.

Please review the enclosed Notice on mailing instructions for information on submitting your rebuttal.

Sincerely,

Shaneé L. Clark, Bar Counsel
Attorney Consumer Assistance Program
ACAP Hotline 866-352-0707

Enclosures (Notice of Grievance Procedures, Copy of Letter to Mr. Goerke; Notice - Mailing Instructions)

cc:    Mr. Steven G Goerke

# <u>NOTICE</u>
## <u>Mailing Instructions</u>

The Florida Bar is in the process of converting its disciplinary files to electronic media.

All submissions are being scanned into an electronic record and hard copies are discarded.

# Please limit your submission to no more than 25 pages including exhibits.

If you have additional documents available, please make reference to them in your written submission as <u>available upon request</u>. Should Bar counsel need to obtain copies of any such documents, a subsequent request will be sent to you. **Please do not bind, or index your documents. You may <u>underline</u> but do not highlight documents under any circumstances. We scan documents for use in our disciplinary files and when scanned, your document highlighting will either not be picked up or may obscure any underlying text.**

**\*\* Materials received that do not meet these guidelines may be returned. \*\***

# Please refrain from attaching media such as audio tapes or CD's, oversized documents, or photographs.

We cannot process any media that cannot be scanned into the electronic record.

# Please do not submit your original documents.

All documents will be discarded after scanning.

# Please do not submit confidential or privileged information.

If information of this nature is important to your submission, please describe the nature of the information and indicate that it is available upon request. Bar counsel will contact you to make appropriate arrangements for the protection of any such information that is required as part of the investigation of the complaint.

Thank you for your consideration in this respect.

Terry Eichas

6926 Skyline Dr.

Delray Beach, FL. 33446



December 30. 2009

The Florida Bar
651 E. Jefferson Street
Tallahassee, FL 32399-2300

To Whom It May Concern:

I would like to file a formal complaint against an attorney that represented me in a Chapter 7 Bankruptcy case.  The attorney:

Steven Goerke

5300 W. Atlantic Ave. #412

Delray Beach, FL. 33484

Mr. Goerke's services were contracted in May of 2009. I had gone through almost 3 years of a declining market working in the Real Estate field. That is something I had done full time for almost 19 years, but during that recession period, I had gone through all of my savings and had already started losing all of my investments to foreclosure.  My net worth of almost 3 million dollars had collapsed to pennies. I literally had to save money over a three to four month period to afford the Bankruptcy cost of $1800.00. Attached is the contract Mr. Goerke signed on May 18, 2009 spelling out what his services would be. My awareness to the biggest problem arose much later in this process concerning #2 of his contract. To advise and council me in regards to the Bankruptcy. Item # 1 becomes apparently a problem also as the process evolves. Please see the attached complaint objecting to my discharge of Bankruptcy.  More than half of the complaints have to do with the inappropriate filing of the petition and statement of financial affairs. I have been challenged by the Trustee and her Attorney both in regards to me signing this falsely. I honestly can say today, I still do not have a good understanding of these forms and question how much is expected of a lay person filing for Bankruptcy.  I did indeed hire an Attorney to help me with these exact issues. Furthermore, questions of assets arose. That was an absolute surprise to me when those questions started during the first meeting with the Trustee. My Attorney had not even asked for bank statements, ledgers or any of the items requested by the Trustee's Attorney. Why did my own Attorney

not request these to prepare for exactly what took place. It seems like I was offered up for a practice run of first year students studying to become legal professionals. I remember back at my Attorney's office when he filled out those forms on his computer. We spoke for about an hour while preparing that form. I had worked for about two weeks preparing all the people and companies I was in debt to. I had supplied that information to him prior to that meeting. I had told him about the truck being given back to the lien holder and he had no problem with that until after it was done. He never questioned me about any other vehicles I had, or any in depth questions concerning the race horses I owned or worked with. There was very little asked up front that seems to have caused the issues today. On October 29, 2009, I received an e-mail from my Attorney stating he did not feel qualified to continue to represent me. Of course my retainer had run out and any further counseling would invoke hourly charges. Why wouldn't this lack of experience in this type of case have been discovered on one of our first encounters? It seems strange that the money was the main objective up front and the paperwork just got thrown together once paid. Then it would cost more once further involved it became. I have interviewed with three Attorneys after this point of which none of them wanted to continue on with what was started. They all asked of the preparation process prior to filing and all were quite shocked of the lack of investigation on my Attorney's part. The only Attorney offering to defend me in a limited way was priced so high, that I absolutely could not afford him. That leaves me in a situation to go before the Judge on this upcoming hearing without council. I believe I have received a tremendous injustice within the legal system by using this Attorney who presents himself as a professional in this procedure. I am no further ahead now by having pursued this legal counsel than if I had attempted filing this on my own which of course would make no sense at all. I find myself calling this out to your attention to prevent this happening to someone else relying on legal help from this person. I strongly suggest an investigation of this Attorney's practice in regards to preparing a bankruptcy.

Thank you for your time,

Terry R. Eichas

Law Offices
## MCRAE LAW OFFICES, P.A.
5300 West Atlantic Avenue, Suite 412
Delray Beach, Florida 33484
Phone  561-638-6600
Fax  561-638-6617

Michael T. McRae *
Steven G. Goerke *

---

*Board Certified Business Litigation Lawyer
*Also Admitted in New York

May 18, 2009

Client Name and Address:                Terry R. Eichas
                                        6926 Skyline Drive
                                        Delray Beach, Florida 33446

Client Phone No.: 561 445-6680

Re: Chapter 7 Bankruptcy Filing

Terry Eichas, hereinafter the 'client', hereby retains and employs McRae Law Offices, P.A., hereinafter
'Attorney', as his attorney to represent him in preparing and filing a voluntary Chapter 7 bankruptcy
proceeding.

It is understood by the client that the attorney shall file a Chapter 7 petition, statement of affairs, all
related schedules and other required documents in the United States District Court for the Southern
District of Florida based on full disclosure of all relevant items by the client. Attorney shall perform the
following services as they relate to the bankruptcy case.

1  Prepare, on behalf of the client, all necessary petitions, schedules, motions, reports and other legal
papers;

2  Advise and counsel the debtor in possession concerning the bankruptcy process; and

3  Attend a 2004 (Sec meeting of creditors) with the client, and the confirmation hearing if required.

The attorney will represent the client at one 2004 examination.  The client acknowledges that this
agreement does not include any services rendered with regard to any adversary proceedings, appeals or
work on any causes of action not disclosed to the attorney.  In the event an adversary proceeding is
filed  attorney may withdraw from representation or be entitled to additional compensation at the
hourly rate of $250.00 per hour

It is understood by the client that it is the client's obligation to furnish the attorney with a full list of creditors with correct addresses. It is imperative that a creditor list with full addresses be furnished in a timely basis to insure the proper filing with the Bankruptcy Court and notice to all creditors. In the event a creditor is omitted, the liability to said creditor may exist subsequent to the bankruptcy being closed. Creditors may be added after the filing of the bankruptcy after the payment of a small fee to the clerk of the court

Client understands that if he does not attend the 341 meeting or any other appearances ordered by the court, that his rights may be impaired, and his case may be subject to dismissal

Attorney agrees to represent client for the non-refundable sum of $1,501.00, payable in full prior to the bankruptcy filing. Client shall also advance the filing fee $299.00. Client agrees to pay the attorney an additional fee of $1,000.00 if the case is voluntarily converted to a proceeding under Chapter 13. Conversion to a Chapter 13 is extremely rare and would be considered only if the client's exemptions are challenged or the client's home were to go into foreclosure status after the original filing. In the event the client's case is converted is converted to a Chapter 13, client grants the attorney a lien against any non-distributed funds in the possession of the Chapter 13 Trustee, and authorizes the attorney to file a motion with the court to obtain payment of any unpaid portion of the legal fee out of the client's funds in the possession of the Chapter 13 Trustee. Payment of the retainer and filing fee are hereby acknowledged by the Attorney

The client acknowledges that the Chapter 7 discharges unsecured, personal liability. Secured creditors are still entitled to enforce their secured interest against the collateral. Therefore, in the event the client's desire to retain secured assets such as homes and financed automobiles, they must continue to make payments to the secured creditors or pay the secured creditors the value of the asset. Certain creditors such as Cut Furniture, Sears and Rooms-to-Go regularly claim a secured interest in items purchased from them under the terms of the original purchase agreement. Consequently, it is possible to have a secured obligation to a creditor that you may not realize has such a claim

Client shall have the right to cancel this agreement if he is not able to justify his expenses so as to entitle him to file a Chapter 7 bankruptcy, and/or if his income exceeds that permitted for filing of a Chapter 7 bankruptcy

Client understands that within thirty days of the filing of his bankruptcy proceeding he will be required to participate in post-filing credit counseling and provide Attorney with proof of completion. The counseling may be undertaken via the Internet any site approved by the Court including cccsatl.org

The client may receive requests for information and/or documentation from the Trustee assigned to their case. These requests should be timely complied with. Failure to do so could result in dismissal of your case

Client must provide the Attorney with the following:

a. Certificate of completion of pre-filing bankruptcy counseling;
b. Current credit report;
c. Copies of pay stubs received in last 60 days for all employment;
d. Copies of last six months statements for all financial accounts in which Client has an interest; and
e. Copies of last two years income tax returns

2

Attorney reserves the right to withdraw from representation of client if client is found to have made false disclosures or non-disclosures to attorney.

Client hereby agrees to the payment terms and conditions of this representation.

McRAE LAW OFFICES, P.A.
5300 West Atlantic Avenue #412
Delray Beach, Florida 33484
(561) 638-6600

By: _____
Steven Goerke, Esq.
FBN 494135

I hereby acknowledge that I have read and accepted the foregoing agreement.

Dated:  May 18, 2009

_____
Client

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                        Case No.:   09-21514-BKC-EPK
                                              Chapter 7
TERRY R. EICHAS,

        Debtor.

_____

DEBORAH C. MENOTTE, Trustee in
Bankruptcy for Terry R. Eichas,

        Plaintiff,
vs.                                                    Adv.Proc.No.:

TERRY R. EICHAS,

        Defendant.

_____/

## COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO 11 U.S.C. § 727

The Plaintiff, **Deborah C. Menotte, Trustee in Bankruptcy for Terry R. Eichas**, (hereinafter referred to as "Trustee") by and through undersigned counsel, hereby sues the Defendant, Terry R. Eichas (hereinafter referred to as "Debtor") pursuant to Bankruptcy Rule 7001 and alleges:

## GENERAL ALLEGATIONS

1.      This is an adversary proceeding brought by **Deborah C. Menotte, Trustee in Bankruptcy for Terry R. Eichas,** objecting to discharge pursuant to 11 U.S.C. §727.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334(b). This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §157(b)(2)(A)(H) & (J).

JKM 6852901

1

3.    This voluntary Chapter 7 proceeding was filed on June 10, 2009 by Terry R. Eichas.

4    In or around January 2006, the Debtor received approximately $1.2 million from the sale of his interest in Delray Beach Realty Group, Inc.

5    The Trustee has attempted to determine how such funds from the above referenced $1.2 million have been spent. The Debtor has claimed that he deposited the funds received from such sale into a personal account. However, even though some documents have been provided, the Debtor has failed to provide sufficient banking records regarding the receipt of these funds and disposition of such funds. The Debtor has not produced sufficient banking records to allow the Trustee to ascertain the Debtor's financial condition or business transactions.

6    The Debtor either transferred a 2004 Ford pickup to John Patrick Cleary, Jr., or transferred the funds from the sale of a 2004 Ford pickup to John Patrick Cleary, Jr. ("Cleary") within a year preceding the bankruptcy filing. The Debtor has failed to provide sufficient documentation to the Trustee for the Trustee to determine if the actual vehicle was turned over to Cleary or if funds from the sale of the 2004 Ford pickup were paid to Cleary. The Debtor has claimed that he sold the vehicle to CarMax, and turned the proceeds over to Cleary, yet has failed to produce documentation as to same.

7    On or around April 2009, the Debtor transferred a horse to Jasmine Gagnon for $4,700.00

8    Such transfer of a horse to Jasmine Gagnon was not disclosed by the Debtor anywhere on his Schedules or Statement of Financial Affairs, including, but not limited to questions 1, 2, or 10

RM 685290

2

9.    The Debtor has failed to provide documentation as to the transfer of the horse, other than a copy of a check.

10.    In June 2008, the Debtor transferred his interest in GJTT, LLC  to Jian Zhen for $10,000.00.

11.    Such transfer of the Debtor's interest in GJTT, LLC to Jian Zhen was not disclosed by the Debtor anywhere on his Schedules or Statement of Financial Affairs, including, but not limited to questions 1, 2, or 10.

12    The Debtor transferred $7,500.00 to 885 Realty Group, LLC in June 2008.

13.    Such transfer of $7,500.00 to 885 Realty Group, LLC was not disclosed by the Debtor anywhere on his Schedules or Statement of Financial Affairs, including, but not limited to, question 10.

14    The Debtor is a Director of 885 Realty Group, LLC and intentionally transferred such funds referenced above of $7,500.00 just outside one year before the bankruptcy filing in order to attempt to insulate such entity from any potential liability as a recipient of an avoidable preferential transfer pursuant to 11 U.S.C. § 547

15    On or around January 2009, the Debtor transferred real property located at 2650 Mulberry Road, Avon Park, Florida, to Larrick D. Albritton.

16.    The transfer of the real  property located at 2650 Mulberry Road, Avon Park, Florida, to Larrick D  Albritton was not disclosed by the Debtor anywhere on his Schedules or Statement of Financial Affairs, including, but not limited to, question 10.

## COUNT I - DENIAL OF DISCHARGE
## PURSUANT TO 11 U.S.C. §727(a)(2)(A)

17.    The Plaintiff realleges paragraphs 1 through 16 as if fully set forth herein.

RV 68529

3

18.    The transfer of a 2004 Ford pickup, or lien on same, or the transfer of the funds received from the sale of the 2004 Ford pickup, to John Patrick Cleary, Jr, the transfer of a horse in April 2009 for $4,700.00, and the transfer of real property located at 2650 North Mulberry Road, Avon Park, Florida, all which occurred within one (1) year before the date of the bankruptcy filing, were transfers and concealments done with the intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under Title 11. The Debtor has transferred and concealed or has permitted to be transferred or concealed, property of the Debtor within one (1) year before the date of the filing of the bankruptcy petition.

19.    Terry R. Eichas' discharge should be denied pursuant to 11 U.S.C. §727(a)(2)(A) as a result of these transfers and concealments.

WHEREFORE, the Trustee, Deborah C. Menotte, by and through undersigned counsel, respectfully requests that this Court enter judgment denying the discharge of Terry R. Eichas, plus grant such other and further relief as this Court deems just and proper.

## COUNT II - DENIAL OF DISCHARGE
## PURSUANT TO 11 U.S.C. §727(a)(3)

20    The Trustee realleges paragraphs 1 through 16 as if fully set forth herein.

21.    The Debtor has failed to keep and/or preserve relevant documentation as is necessary pursuant to 11 U.S.C. §727(a)(3) in order to ascertain his financial condition or business transactions.

22    There is insufficient recorded information in which to ascertain all of the Debtor's financial condition or business transactions based upon the missing or insufficient documentation alleged in the preceding paragraphs and also based upon the fact that the Debtor is indebted to

creditors for in excess of $400,000.00 dollars without any documentation to demonstrate the disposition of assets to support such debt.

23. As further explained above, the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents records, and papers from which the Debtor's financial condition or business transactions might be ascertained.

24. Terry R. Eichas' discharge should be denied pursuant to 11 U.S.C. § 727(a)(3) as a result of his actions.

WHEREFORE, the Trustee, Deborah C. Menotte, by and through undersigned counsel, respectfully requests that this Court enter judgment denying the discharge of the Debtor. Terry R. Eichas, plus grant such other and further relief as this Court deems just and proper.

## COUNT III – DENIAL OF DISCHARGE
## PURSUANT TO 11 U.S.C. §727(a)(4)(A)

25. The Trustee realleges paragraphs 1 through 16 as if fully set forth herein.

26. On or about June 10, 2009, and on all of the dates of the signing of his bankruptcy Schedules, as well as the date of his 341 first meeting of creditors, and at the Rule 2004 examination, the Debtor knowingly and fraudulently made false oaths or accounts in this case. Under penalty of perjury, the Debtor certified that the Schedules and Statement of Financial Affairs of his bankruptcy petition were true and correct. In truth and in fact, as the Debtor well knew, the Schedules and Statement of Financial Affairs contained numerous material omissions and false statements.

27. The material omissions and false statements, as provided more specifically in the

preceding paragraphs, include, but are not limited to, the following:

(a)    Failure to disclose anywhere on his Schedules or Statement of Financial Affairs questions 1, 2, or 10, the transfer of a horse for $4,700.00 in April 2009;

(b)    Failure to disclose on his Schedules or Statement of Financial Affairs, questions 1, 2, or 10, the receipt of $10,000.00 from the transfer of the Debtor's interest in GJTT, LLC;

(c)    Failure to disclose on his Schedules or Statement of Financial Affairs, question 10, the transfer of $7,500.00 to 885 Realty Group, LLC in June 2008;

(d)    Failure to disclose on his Schedules or Statement of Financial Affairs, question 10, the transfer of real property located at 2650 Mulberry Road, Avon Park, Florida, in January 2009.

28.    As provided within 28 U.S.C. §1746 such certification made by the Debtor had the same force and effect of an oath.

29    Terry R. Eichas discharge should be denied pursuant to 11 U.S.C. §727(a)(4)(A) as a result of his actions.

WHEREFORE, the Trustee, Deborah C. Menotte, by and through undersigned counsel, respectfully requests that this Court enter judgment denying the discharge of the Debtor, Terry R. Eichas, plus grant such other and further relief as this Court deems just and proper.

## COUNT IV - DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. §727(a)(4)(D)

30.    The Trustee realleges paragraphs 1 through 16 as if fully set forth herein.

31.    Pursuant to 11 U.S.C. §727(a)(4)(D), the Court shall grant the debtor a discharge, unless:

> "The debtor knowingly and fraudulently, in or in connection with the case withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs."

RM 285250

6

32.    The Debtor has failed and refused to turn over all documentation, and as otherwise demonstrated by his conduct, has knowingly and fraudulently, in or in connection with the case withheld from the Trustee recorded information, including sufficient banking records regarding the receipt and disposition of approximately $1.2 million in January 2005 from the transfer of the Debtor's interest in Delray Beach Realty Group, Inc., and has failed and refused to turn over sufficient documentation regarding the transfer of a 2004 Ford pickup, or the transfer of the funds received from the sale of the 2004 Ford pickup, to John Patrick Cleary, Jr., which in turn justifies denial of his discharge.

33.    The discharge of Terry R. Eichas should be denied pursuant to 11 U.S.C. §727(a)(4)(D).

WHEREFORE, the Trustee, Deborah C. Menotte, by and through undersigned counsel, respectfully requests that this Court enter judgment denying the discharge of Terry R. Eichas, plus grant such other and further relief as this Court deems just and proper.

### COUNT V - DENIAL OF DISCHARGE
### PURSUANT TO 11 U.S.C. §727(a)(5)

34.    The Trustee realleges paragraphs 1 through 16 as if fully set forth herein.

35.    While the Trustee has requested documentation from the Debtor, the documentation produced by the Debtor has been woefully inadequate.  Accordingly, the Debtor has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet his liabilities.

36.    The Debtor has incurred substantial liabilities to unsecured creditors of in excess of $400,000.00.  However, the Debtor cannot demonstrate a loss of assets or deficiency of assets to meet these liabilities.  It is clear that the Debtor has substantial unpaid liabilities which do

RM 685290.1

7

not correspond with his assets that existed as of the date of filing bankruptcy.

37.    Terry R. Eichas discharge should be denied pursuant to 11 U.S.C. §727(a)(5) as a result of his actions.

WHEREFORE, the Trustee, Deborah C. Menotte, by and through undersigned counsel, respectfully requests that this Court enter judgment denying the discharge of the Debtor, Terry R Eichas, plus grant such other and further relief as this Court deems just and proper.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Dated this 17 day of October 2009.

RUDEN, MCCLOSKY, SMITH,
SCHUSTER & RUSSELL, P.A.

MICHAEL R. BAKST, ESQ.
Attorney for Plaintiff/Trustee
Florida Bar No.: 866377
222 Lakeview Ave., Suite 800
West Palm Beach FL 33401
(561) 838-4523
(561) 514-3423 (facsimile)

October 29, 2009

Mr. Terry Eichas
6926 Skyline Drive
Delray Beach, FL 33446

Re:    Bankruptcy Adversary

Dear Terry:

As you are aware, an answer to the Adversary Complaint is due on November 13, 2009. As previously advised I have never handled a dischargeability complaint of this type  The couple of times it has happened to prior clients, I referred the case out to someone experienced in dischargeability litigation.  I do not believe that I possess the experience in these type matters that you require.

I very much want you to get through this matter successfully, that is why I recommended that you hire Robert Furr, Esq  or someone from his office.  There are likely many other attorneys in the county that have significant experience handling dischargeability complaints.  However, I'm not sure they possess the same clout.

There is a deposition of Mr. Cleary scheduled for tomorrow, October 30, 2009 at 2:00 p.m.  I do not know if Mr. Cleary was served with the notice or if he plans to attend.  Due to a conflict I cannot attend the deposition.  If you have not retained a lawyer to handle this stage of the proceeding, I have to try to figure out what to do with the deposition.  Do you have a new attorney?  Is Cleary going to show for the deposition?  Please let me know

If the dischargeability action is not fought, you will be denied a discharge and will remain liable on all of your debt.  Additionally, the Trustee will continue to chase you and third parties such as Cleary and S&S.  The dischargeability matter must be addressed.

                                                McRAE LAW OFFICES, P.A.


                                                By: _____
                                                      Steve Goerke

**TRE**

From:        Steven Goerke [sgoerke@mcraelawfirm.com]
Sent:        Friday, October 16, 2009 3:22 PM
To:          trehod@gmail.com
Subject:     bankruptcy adversary
Attachments: adversary complaint.pdf

Terry:

Attached is a copy of the adversary complaint objecting to your discharge.  This proceeding is outside the scope of our retainer agreement.  There are firms and attorneys that possess certain "status" in the Bankruptcy Court that are better able to get a positive result for you.  I have never defended this type of complaint.  This type of complaint was filed on only a couple of cases I was of record in.  I referred those matters out.

I recommend that you retain Robert Furr's office to handle this portion of the case.

Steve Goerke
McRae Law Offices, P.A.
(561) 638-6600

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 8.5.421 / Virus Database: 270.14.18/2437 - Release Date: 10/16/09 06:32:00

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re                                         Case No. 09-21514-EPK

TERRY R. EICHAS,
                                              Chapter 7
        Debtor

_____

## MOTION TO WITHDRAW AS COUNSEL OF RECORD FOR THE DEBTOR

Steven Goerke, Esq., hereby moves this Court for an Order granting him leave to withdraw as counsel of record for the Debtor, Terry R. Eichas, and as grounds therefore states.

1. Counsel and the Debtor previously entered into a retainer agreement.

2. This retainer agreement specifically excludes representing the Debtor in adversary proceedings and provides Counsel the authority to withdraw if an adversary is filed

3. The Trustee has filed an adversary proceeding against the Debtor seeking to deny the Debtor's discharge

4. The Debtor is without funds to retain counsel and intends to defend the adversary proceeding pro se.

5 Debtor has requested Counsel to withdraw and has agreed to the entry of an order granting that withdrawal. A copy of the Debtor's consent is attached hereto

WHEREFORE, Steven Goerke, Esq. of McRae Law Offices. P A., respectfully requests that this Court enter an Order granting him leave to withdraw as counsel of

record for the Debtor herein.

Steven Goerke, Esq.
Attorney for Debtor
McRae Law Offices, P.A.
5300 West Atlantic Avenue, Suite 412
Delray Beach, FL 33484
Phone: 561-638-6600
Fax:    561-638-6617
Fla. Bar No. 494135
Sgoerke@mcraelawfirm.com

## Request to withdraw

TRE [trenod@gmail.com]                            **EXHIBIT A**

**Sent:** Thursday, November 12, 2009 11:36 AM

**To:** Steven Goerke

**Cc:** dane oclasio@ruden.com

To: Steven Goerke

November 12, 2009

Please allow this e-mail to serve as legal document requesting you withdraw as my Attorney, to my Bankruptcy proceedings date June 10, 2009. I consent to your submission of an agreed order granting your motion to withdraw

Terry R Eichas

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                          Case No. 09-21514-BKC-EPK

TERRY R. EICHAS,
                                                Chapter 7
        Debtor.

_____/

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Motion to Withdraw as Counsel of Record

for Debtor was electronically mailed this 12th day of November 2009 to:

Michael R. Bakst, Esq. michael.bakst@ruden.com
Deborah C. Menotte, Trustee menottetrustee@bellsouth.com
Wayne B. Spivak. Esq. sobkmail@defaultlawfl.com

and mailed by U.S. regular mail this 12th day of November 2009 to:

Terry Eichas
6926 Skyline Drive
Delray Beach. FL 33446

Steven Goerke. Esq.
Attorney for Debtor
Fla. Bar No. 494135
McRAE LAW OFFICES, P.A.
5300 West Atlantic Avenue, Suite 412
Delray Beach, FL 33484
(561) 638-6600
sgoerke@mcraelawfirm.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re                                                Case No  09-21514-EPK

TERRY R. EICHAS,

                                                     Chapter 7

        Debtor.
_____/

## AGREED ORDER MOTION TO WITHDRAW AS
## COUNSEL OF RECORD FOR THE DEBTOR

        THIS CAUSE came before the court upon Steven Goerke, Esq.'s Motion to

Withdraw as Counsel of Record for the Debtor.  The court having been advised that the

Debtor, Terry R. Eichas, has consented to the withdrawal and agrees to the entry of this

agreed order granting the relief requested, it is

        ORDERED that Steven Goerke, Esq.'s Motion to Withdraw as Counsel of Record

for the Debtor is hereby granted.

                                    ###

Submitted by

Steven Goerke, Esq.
McRae Law Offices, P.A.
5300 West Atlantic Avenue, Suite 412
Delray Beach, FL 33484
Phone: 561-638-6600
Fax:    561-638-6617
Fla. Bar No. 494135
Sgoerke@mcraelawfirm.com

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F)

Terry R. Eichas  Debtor
Michael Bakst, Esq.
Deborah Menotte, Trustee



# THE FLORIDA BAR

**JOHN F. HARKNESS, JR.**
EXECUTIVE DIRECTOR

**651 EAST JEFFERSON STREET**
**TALLAHASSEE, FLORIDA 32399-2300**

(850) 561-5600
www.FLABAR.org

*THE FLORIDA BAR*
*RECEIVED*
*JAN 2 0 2010*
*ACAP*
*TALLAHASSEE, FLORIDA*

January 13, 2010

Mr. Terry Eichas
6926 Skyline Dr.
Delray Beach, FL 33446

Re:    Mr. Steven G Goerke; RFA No. 10-13024

Dear Mr. Eichas:

The Supreme Court of Florida has adopted rules that require the allegations be signed and under oath. In order to comply with this rule you must sign the oath below and return it to us by **January 25, 2010** before we can proceed with an investigation.

Under penalty of perjury, I declare that the facts contained in the inquiry submitted to The Florida Bar concerning Mr. Goerke are true, correct and complete.

_____        _____1/15/10_____
Mr. Terry Eichas                                                    Date

If you do not complete and return the oath form to us, we may be unable to proceed with the investigation. A copy of the rule imposing this obligation (3-7.3(c)) may be found on the Bar's web site at www.floridabar.org.

Also, if you have documents that you feel support your allegations, please provide copies of

Thank you for your cooperation.

Sincerely,

Shaneé L. Clark, Bar Counsel
Attorney Consumer Assistance Program
ACAP Hotline 866-352-0707

# TRE

**From:** Steve Goerke [steve@mcraelawfirm.com]
**Sent:** Friday, June 05, 2009 1:47 PM
**To:** TRE
**Subject:** bankruptcy
**Attachments:** SKMBT_C45109060513330.pdf; retainer 5.18.9.pdf

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Terry:

Attached is another draft petition. I have highlighted some areas and added some handwritten comments and questions.

If not previously provided, I require the following to file:

X A copy of your last two years personal tax returns; *3 DAYS PRIOR TO FILING.*
last 6 months bank statements;
pay stubs for the last 60 days (see, Statement Regarding Payment Advises - 3 page from back of paperwork attached)

It is almost certain that you will be asked for the paperwork on your lien on 885 and the bank statements/tax returns for all company accounts.

Valuation of 885 is on great importance. I need to specify your percentage interest in Schudule B. We will need to prove the valuation used.

Once these remaining changes are made, we can file.

Steve

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 8.5.339 / Virus Database: 270.12.53/2156 - Release Date: 06/05/09 06:24:00

1

**TRE**

From:          Steve Goerke [sgoerke@mcraelawfirm.com]
Sent:          Monday, June 08, 2009 7:32 PM
To:            'TRE'
Subject:       RE: ????

Terry:

Sorry to be so far behind.  If there is nothing of consequence in the statements for personal
and business, please get me both.  It is helpful for the trustee to have all information and
they would likely be asked for anyway.

Steven G. Goerke, Esq.

McRae Law Offices, P.A.

5300 West Atlantic Avenue, Suite 412

Delray Beach, FL 33484

Phone:  561-638-6600

Fax:  561-638-6617

sgoerke@mcraelawfirm.com


IMPORTANT NOTICE: THIS IS A CONFIDENTIAL COMMUNICATION. THE INFORMATION CONTAINED IN THIS
ELECTRONIC MAIL AND ANY ATTACHMENTS IS PRIVILEGED AND CONFIDENTIAL AND INTENDED SOLELY FOR
THE RECEIPT AND USE BY THE INDIVIDUAL OR ENTITY NAMED ABOVE TO WHOM IT IS DIRECTED. IF THE
READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU
HAVE RECEIVED THIS COMMUNICATION IN ERROR, KINDLY NOTIFY US IMMEDIATELY BY ELECTRONIC MAIL OR
OTHERWISE AND DELETE THE ORIGINAL MESSAGE. THANK YOU.


Our law firm does not provide tax advice and no portion of this email should
be interpreted as providing tax advice.   This writing is not intended or
written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may
be imposed on a taxpayer by the Internal Revenue Service.


-----Original Message-----
From: TRE [mailto:trehod@gmail.com]
Sent: Friday, June 05, 2009 9:15 PM
To: Steve Goerke
Subject: ????


Steve,

Do you want 6 months of each account or just the personal?

1

**TRE**

| | |
|---|---|
| **From:** | Steven Goerke [sgoerke@mcraelawfirm.com] |
| **Sent:** | Friday, October 16, 2009 3:22 PM |
| **To:** | trehod@gmail.com |
| **Subject:** | bankruptcy adversary |
| **Attachments:** | adversary complaint.pdf |

Terry:

Attached is a copy of the adversary complaint objecting to your discharge.   This proceeding is outside the scope of our retainer agreement.  There are firms and attorneys that possess certain "status" in the Bankruptcy Court that are better able to get a positive result for you.   I have never defended this type of complaint.  This type of complaint was filed on only a couple of cases I was of record in.  I referred those matters out.

I recommend that you retain Robert Furr's office to handle this portion of the case.

Steve Goerke
McRae Law Offices, P.A.
(561) 638-6600

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 8.5.421 / Virus Database: 270.14.18/2437 - Release Date: 10/16/09 06:32:00

1

**TRE**

| | |
|---|---|
| From: | Steven Goerke [sgoerke@mcraelawfirm.com] |
| Sent: | Tuesday, November 10, 2009 4:25 PM |
| To: | trehod@gmail.com |
| Subject: | bankrutpcy |
| Attachments: | let from Bakst 11.10.pdf |

Dear Terry:

As you are aware, your answer to the adversary complaint is due Friday.  Today, I received the attached letter from Michael Bakst.  As you desire to speak with him directly, I will give him written approval.

It was my hope that you would retain an attorney experienced in discharge proceedings.  Representation in the discharge action is outside our retainer.  I am obligated to meet all deadlines relating to the adversary unless I file a motion to wtihdraw as your counsel.  As previously advised, you really need someone experienced in discharge complaints.

Should I file a motion to withdraw?  Please let me know what you want.

Steven G. Goerke
Board Certified Civil Trial Lawyer by The Florida Bar
McRae Law Offices, P.A. | 5300 W. Atlantic Avenue, Suite 412 | Delray Beach, FL 33484
Phone 561.638.6600 | Toll Free 888.262.0206 | Fax 888.308.6020
sgoerke@mcraelawfirm.com | www.mcraelawfirm.com

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 8.5.425 / Virus Database: 270.14.59/2494 - Release Date: 11/10/09 07:38:00

1

**TRE**

| | |
|---|---|
| **From:** | Steven Goerke [sgoerke@mcraelawfirm.com] |
| **Sent:** | Wednesday, November 11, 2009 11:30 AM |
| **To:** | TRE |
| **Subject:** | RE: bankrutpcy |

Terry:

Of all the items, it is my belief that the truck is the toughest. I recommend that you come by the office and we will put together an answer to the complaint. I'll throw in the legal stuff, you add whatever else you want. I will then withdraw. You will then have the right to appear in front of the judge or deal with the trustee on your own.

Steven G. Goerke
Board Certified Civil Trial Lawyer by The Florida Bar
McRae Law Offices, P.A. | 5300 W. Atlantic Avenue, Suite 412 | Delray Beach, FL 33484
Phone 561.638.6600 | Toll Free 888.262.0208 | Fax 888.308.6020
sgoerke@mcraelawfirm.com | www.mcraelawfirm.com

**From:** TRE [trehod@gmail.com]
**Sent:** Tuesday, November 10, 2009 1:43 PM
**To:** Steven Goerke
**Cc:** diane.locascio@ruden.com
**Subject:** RE: bankrutpcy

Steve,

As I have explained to you and Michael's assistant, I do not have money to hire another attorney. I have spoke with two others and the retainer is impossible for me to pay let alone continuing cost. My hope is to get in front of a judge that will allow me a second chance to file and do it right this time. There are still many things I do not understand about bankruptcy, but I believe the filing date was one of the biggest mistakes along with question 10 on the form. At this stage of my life, there is nothing else financially I can loose let alone pouring good money after bad trying to fight this objection to discharge. My only hope is to speak with Michael or Deborah Menotte to get direction and understanding as to how I can proceed without funds.
Please forward the letter to Michael Bakst.
Thanks,
Terry Eichas

**From:** Steven Goerke [mailto:sgoerke@mcraelawfirm.com]
**Sent:** Tuesday, November 10, 2009 4:25 PM
**To:** trehod@gmail.com
**Subject:** bankrutpcy

Dear Terry:

As you are aware, your answer to the adversary complaint is due Friday. Today, I received the attached letter from Michael Bakst. As you desire to speak with him directly, I will give him written approval.

1

**TRE**

**From:** Steven Goerke [sgoerke@mcraelawfirm.com]
**Sent:** Thursday, November 12, 2009 12:47 PM
**To:** trehod@gmail.com
**Subject:** adversary answer

Terry:

As previously advised, I am willing to assist you in preparation of an answer.  As the adversary is pending, I need to file a motion to withdraw.  This will require that I attend a hearing unless you provide me a signed consent approving the withdrawal.

There are legal defenses that should be timely raised.

Steven G. Goerke
Board Certified Civil Trial Lawyer by The Florida Bar
McRae Law Offices, P.A. | 5300 W. Atlantic Avenue, Suite 412 | Delray Beach, FL 33484
Phone 561.638.6600 | Toll Free 888.262.0208 | Fax 888.308.6020
sgoerke@mcraelawfirm.com | www.mcraelawfirm.com

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 8.5.425 / Virus Database: 270.14.59/2494 - Release Date: 11/12/09 07:38:00

1

**TRE**

From:          Steven Goerke [sgoerke@mcraelawfirm.com]
Sent:          Thursday, November 12, 2009 2:25 PM
To:            trehod@gmail.com
Subject:       consent to withdrawal and agreed order

Terry:

Please provide me an email or letter confirming that you consent to me withdrawing as your attorney and that you consent to submission of an agreed order granting my motion to withdraw. This will eliminate the need for a court hearing.

Thanks. Best of luck.

Steven G. Goerke
Board Certified Civil Trial Lawyer by The Florida Bar
McRae Law Offices, P.A. | 5300 W. Atlantic Avenue, Suite 412 | Delray Beach, FL 33484
Phone 561.638.6600 | Toll Free 888.262.0208 | Fax 888.308.6020
sgoerke@mcraelawfirm.com | www.mcraelawfirm.com

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 8.5.425 / Virus Database: 270.14.59/2494 - Release Date: 11/12/09 07:38:00

1

ADV −09-2182-EPK-A

RE: Case # 09-21514-BKC-EPK

Deborah C Menotte  vs.  Terry R Eichas

U.S. BANKRUPTCY COURT
SO. DISTRICT OF FLORIDA

JAN 1 4 2010

FILED _CMK_ RECEIVED _____

RE: RESPONSE TO COMPLAINT AND OBJECTION PURSUANT TO 11 U.S.C. §727

I am going to make a feeble attempt to answer all the questions to the best of my knowledge that have
been presented in the complaint objecting to Bankruptcy Discharge.

First of all, please understand that I am not an attorney and I do not comprehend the bankruptcy laws or
system. At this time, I am unable to afford defense council in this matter and will have to do the best I
can without legal help. I have interviewed two other bankruptcy firms but cannot afford the retainer
amount let alone further costs in the procedures.

I had obtained council to prepare this bankruptcy but quite honestly little was done to educate me of
the boundaries I need to comply with. He has been completely unsuccessful in handling this advisory
complaint and three different times has written to me that this is out of his realm of expertise. He has
also stated that I have exhausted my retainer and thus the reasons for his withdraw. I believe a lot of
the issues to follow could have been remedied if I had competent representation that understood how
to complete the forms properly and had a better understanding of the law.

This bankruptcy was caused from the economic decline causing a substantial decrease in income from
the latter part of 2006 to the present. High mortgage payments and failing businesses have reduced my
cash reserves to nothing and have taken an 800 credit score crashing to almost half that amount. When
a real estate transaction took place in May 2009, I was able to afford the cost of this bankruptcy. I hired
an attorney specializing in Bankruptcy and put my faith in his expertise to direct me to a positive result
in completing Bankruptcy in Chapter 7.

I supplied him with all requested names, account numbers and addresses to the people and businesses
that I owed money. What surprises me now is that he never asked for the bank statements and tax
returns for me or any of my businesses. You can imagine what a surprise I had with my first meeting
with the Trustee when all this was requested. I gathered information for the next four days totaling well
over 7000 pages of information that was immediately forwarded to the Trustee. I felt completely
unprepared for the questioning that was about to take place. Then there were the forms. It took a little
less than one hour in the attorney's office for him to fill out the computer generated forms to complete
bankruptcy.  It's no wonder I thought I understood the questions at the time but had no guidance to the
intensity of the questions once in the deposition.

As I stated in deposition, that while the majority of these complaints stem from the Question #10 of the
Statement of Financial Affairs form, I still believe buying and selling property and horses is exactly the
ordinary course of business that I am in.  At this present time, I am unrepresented simply because I am
unable to afford council.



EXHIBIT
2-f

RESPONSES:

#4 - #5.  The $1.2 million from sale of property was collected in three installments. January 25, 2006 was the first deposit, March 9, 2006, and the final payment was January 10, 2007. The Trustee has been supplied all bank statements of all companies going back to 2005. The deposits were clearly shown and of course once deposited, withdraws were all bank documented. I might add at this time, that the normal monthly payments on mortgages were approx $25,000.00 per month on properties that I owned. Towards the end of 2006, the income from the businesses that had been producing this income to support these loans had dropped rapidly. I was not only going into the checking account for these payments but the businesses themselves were requiring large sums of money to maintain payroll and expenses. These banking statements have ALL been supplied to the Trustee.

#6.  The 2004 Ford pickup. There seems to be some sort of question as to whether the lien secured on the vehicle was valid. I supplied the loan check that originated the lien in February of 2008 even though the recording did not take place until the license renewals were due. The 2004 ford pickup was appraised at CarMax in the amount of $8,000.00 in May 2009 to establish value of the vehicle. I then signed the title for Mr Cleary and dropped the truck off at a Ford dealership as stated in the deposition. Mr Bakst was interrupted several times during this part of the deposition by text messages and I'm sure he missed the statement that I had made. Mr. Cleary will disclose further transaction at his deposition as to what he did from that point. I am uncomfortable speaking for someone else's activities.

#7 - #8.  I did indeed sell a horse to Jasmine Gagnon for $4700.00. I believe this was in my normal course of business and why the question was not raised by my council when the statements were available is a mystery to me.

#10 - #14.  The sale took place to avoid foreclosure and the monies were transferred to cover some of the debt owed to 885 Realty Group Inc. This all took place outside of the year prior to filing.

#15 - #16.  I do not understand what relevance this has and would have to refer to later council for clarification.

#17 - #22.  Already spoke to in previous questions.

#23 - #24.  I take great offense to the statement in #23. All documents requested were turned over to council within days of the request. Might I add, the entire discovery and questions raised were sourced from these documents. If I were hiding information, why would I have been so cooperative in turning over all the documents requested especially in such large volume as I did supply. Perhaps if my council had read through them prior to filing, a better understanding of previous finances would have occurred with much more clarification on the forms. In regards to the question of signing false documents, as I have stated before, I believed I had signed to the best of my knowledge and understanding of the documents, the truth. It frightens me that a government form filled out not according to your ideals can raise such questions. I also am deeply troubled when Attorneys who specialize in this field are not able to give better guidance to a lay person involved in this matter. In my own filed of Real Estate, I am held

to a higher standard and am responsible to a lay person for their understanding of the forms that they sign  How has the legal field escaped such standards?

#25 - #37.  My answer to these questions would be very difficult let alone accurate due to the lack of knowledge of bankruptcy law and proceedings. At this time I can only wait until the preliminary hearing to plead to the Judge the necessity to allow me new council and a chance to re-file under better guidance and professionalism with competent council.  The flaws in this case have been numerous and i am absolutely sure that what has taken place would never have happen if proper procedures had been taken in the beginning. I am truly seeking help and answers.


Sincerely,


Terry R Eichas

6926 Skyline Dr.

Delray Beach, FL. 33446

trehod@gmail.com


November 16th, 2009


Notice will be electronically mailed to:

Michael Bakst – michaelbakst@ruden.com

Deborah C. Menotte -menottetrustee@gmail.com

Office of the U.S. Trustee USTPRegion2l.MM.ECF@Usdoj.gov

JAN 2 6 2010

To: The United States Bankruptcy Court

Southern District Of Florida

West Palm Beach Division

RE: Deborah C Menotte                    Case # 09-21514-BKC-EPK

Vs.                                               Chapter 7

Terry R. Eichas                            Adv. Proc. # 09-02182-BKC-EPK

In regards to the allegations of the amended complaint pursuant to 11U.S.C. §727 the following response comes directly from the defendant without council.

As stated in the rule 2004 examination, the 2004 truck was taken to CarMax only for a price evaluation and then taken to the Ford Dealership by the defendant. A reference to the court reporter would rebut the allegation that the truck was sold to CarMax as stated by Plaintiff's counsel. It is also apparent that the lien on the vehicle registered with the Department of Motor Vehicles by Mr. John P. Cleary Jr. has been disregarded completely and that the vehicle was signed over to him as a cause of this lien. It was entirely Mr. Cleary's prerogative to do with the vehicle as he so chose.

The Debtor's sale of a 2005 Mercedes S-430 did indeed take place. As to it not appearing on the statement of financial affairs along with other assets that have been omitted has lead to a bar complaint with the Attorney who prepared this bankruptcy. The Debtor was never questioned about sold assets in any capacity prior to the filing and was never informed of these requirements. The forms were hurriedly produced on the Attorney's computer and I was told to sign them to proceed forward. The majority of this complaint stems from that situation. The Bar complaint goes on to say that the filing Attorney only asked for 6 months bank statements and two years tax returns just two days prior to the filing date as shown on an e-mail from the Attorney to the Debtor. It is obvious now that proper preliminary examination of the Debtor's affairs were not even questioned by the filing Attorney thus causing my complaint against that Attorney's own retainer contract.

In regards to the second horse trailer in question that was not on the list of assets, at the time of filing, the trailer was in the possession of John Michael Johns who had purchased the trailer with an outstanding amount of $500.00 still owed by Mr. Johns. He had had possession since May of 2007 however allowed the trailer to be repossessed when the 2005 Ford pick-up was repossessed by



Gulfstream Business Bank in September of 2009. That trailer is back at Pompano Harness Track and still has the lien from Mr. John P. Cleary Jr. on its title.

I believe that I have answered all the allegations raised by this amended complaint to the best of my ability.

Sincerely,

_Terry R. Eichas_ (signature)   1/23/10

Terry R. Eichas

CC:

Michael Baskt

Deborah C Menotte

US Bankruptcy Court Southwest District